## THOMAS RYAN ET AL. *v.* JOHN J. CERULLO ET AL.
(SC 17540)

Sullivan, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.[1]

---

[1] The listing of justices reflects their seniority status on this court as of the date of argument.

Argued January 11, 2006—officially released April 17, 2007

*Timothy A. Bishop*, with whom, on the brief, was *Michael S. Casey*, for the appellant (named plaintiff).

*Joseph T. Sweeney*, with whom was *Brian J. Gedicks*, for the appellees (defendants).

*Opinion*

PALMER, J. The named plaintiff, Thomas Ryan,[2] brought this action against the defendants, John J. Cerullo, a certified public accountant, and Cerullo and Company CPA, P.C. (Cerullo & Company), the accounting firm with which Cerullo is associated, seeking damages for professional malpractice and breach of contract arising out of the defendants' allegedly improper preparation of the plaintiff's New York state personal income tax returns. The defendants filed a motion to dismiss the action for lack of personal jurisdiction, which the trial court granted. The trial court thereupon rendered judgment for the defendants, from which the plaintiff appealed.[3] We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The plaintiff resides in Westport, Connecticut, and is employed as an investment banker in New York City. Cerullo is a resident of New York who, since 1992, has been associated with the accounting firm of Cerullo & Company, a New York corporation with its principal office in Tarrytown, New York, and a satellite office in New York City. The plaintiff retained

---

[2] Stephanie Ryan, the named plaintiff's wife, also was a plaintiff but subsequently withdrew from the case. In the interest of simplicity, we refer to Thomas Ryan as the plaintiff throughout this opinion.

[3] The plaintiff appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

the defendants to assist him in the preparation of his 1998 and 1999 federal and state personal income tax returns.[4]

Cerullo prepared the plaintiff's Connecticut and New York personal income tax returns for calendar years 1998 and 1999. After those returns were filed, the department of taxation and finance of the state of New York (tax department) determined that the plaintiff, who had maintained an apartment in New York City during that same two year period, did not qualify as a nonresident for tax liability purposes and, therefore, was subject to additional taxation.[5] As a result of the tax department's determination, the plaintiff ultimately was required to pay an additional $149,654.70 in taxes, penalties and interest to the state of New York.

The plaintiff thereafter filed the present action, alleging that the defendants had committed professional malpractice by failing to advise him regarding his New York state income tax liability. The plaintiff also alleged breach of contract on the basis of the same essential facts.[6] The defendants filed a motion to dismiss pursu-

[4] The defendants prepared the plaintiff's federal and state personal income tax returns until 2003. Only the 1998 and 1999 state income tax returns, however, are the subject of the plaintiff's action.

[5] As an individual who lived in one state but earned income in another, the plaintiff was required to file income tax returns in both states. The plaintiff paid income taxes on his taxable wages in the state in which he earned that income, namely, New York, and then received a credit in Connecticut for the income taxes that he had paid in New York. Thus, as a result of the determination of the tax department that the plaintiff was subject to additional New York state income taxes for 1998 and 1999, the plaintiff was entitled to an additional credit against his Connecticut income taxes.

[6] Shortly after the plaintiff commenced the present action, the defendants removed the case to the United States District Court for the District of Connecticut. Thereafter, however, the District Court remanded the action to state court on the basis of the plaintiff's representation that his damages did not exceed the federal jurisdictional threshold of $75,000. See 28 U.S.C. § 1332 (a) (1) (2000) (vesting federal district courts with jurisdiction over civil actions between citizens of different states when amount in controversy exceeds $75,000, exclusive of interests and costs).

ant to Practice Book § 10-31 (a) (2),[7] claiming that the court lacked personal jurisdiction over them. Specifically, Cerullo claimed that the court lacked jurisdiction over him under the long arm statute applicable to individuals, namely, General Statutes § 52-59b,[8] and Cerullo & Company claimed that the court lacked jurisdiction over it under this state's corporate long-arm statute, namely, General Statutes § 33-929.[9]

[7] Practice Book § 10-31 provides: "(a) The motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, and (5) insufficiency of service of process. This motion shall always be filed with a supporting memorandum of law, and where appropriate, with supporting affidavits as to facts not apparent on the record.

"(b) Any adverse party who objects to this motion shall, at least five days before the motion is to be considered on the short calendar, file and serve in accordance with Sections 10-12 through 10-17 a memorandum of law and, where appropriate, supporting affidavits as to facts not apparent on the record."

[8] General Statutes § 52-59b (a) provides: "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association, or over the executor or administrator of such nonresident individual, foreign partnership or foreign voluntary association, who in person or through an agent: (1) Transacts any business within the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; (4) owns, uses or possesses any real property situated within the state; or (5) uses a computer, as defined in subdivision (1) of subsection (a) of section 53-451, or a computer network, as defined in subdivision (3) of subsection (a) of said section, located within the state."

[9] General Statutes § 33-929 provides in relevant part: "(e) Every foreign corporation which transacts business in this state in violation of section 33-920 shall be subject to suit in this state upon any cause of action arising out of such business. . . ."

General Statutes § 33-920 provides in relevant part: "(a) A foreign corporation, other than an insurance, surety or indemnity company, may not transact business in this state until it obtains a certificate of authority from the Secretary of the State. . . .

In accordance with Practice Book § 10-31 (a), the defendants submitted affidavits from Cerullo and Gaspare J. Cerullo, the principal and sole owner of Cerullo & Company, in support of the motion to dismiss. In those affidavits, the affiants asserted, inter alia, that (1) the plaintiff had retained the defendants to advise him in connection with his federal and state personal income tax liabilities for 1998 and 1999, (2) all meetings between the plaintiff and the defendants took place in New York, (3) the professional services rendered by the defendants on behalf of the plaintiff included numerous written and oral communications with various personnel of the audit and collections divisions of the tax department, (4) the vast majority of the defendants' revenues are derived from persons or entities residing or doing business in New York, (5) the defendants do not solicit business in Connecticut, (6) the defendants have derived only minimal revenue from persons or entities located in Connecticut, and (7) the defendants have not regularly engaged in providing accounting services on an interstate basis.

The plaintiff objected to the motion to dismiss. In support of his objection, the plaintiff claimed that the

"(b) The following activities, among others, do not constitute transacting business within the meaning of subsection (a) of this section: (1) Maintaining, defending or settling any proceeding; (2) holding meetings of the board of directors or shareholders or carrying on other activities concerning internal corporate affairs; (3) maintaining bank accounts; (4) maintaining offices or agencies for the transfer, exchange and registration of the corporation's own securities or maintaining trustees or depositaries with respect to those securities; (5) selling through independent contractors; (6) soliciting or obtaining orders, whether by mail or through employees or agents or otherwise, if the orders require acceptance outside this state before they become contracts; (7) creating or acquiring indebtedness, mortgages and security interests in real or personal property; (8) securing or collecting debts or enforcing mortgages and security interests in property securing the debts; (9) owning, without more, real or personal property; (10) conducting an isolated transaction that is completed within thirty days and that is not one in the course of repeated transactions of a like nature; (11) transacting business in interstate commerce.

"(c) The list of activities in subsection (b) of this section is not exhaustive."

court had jurisdiction over Cerullo & Company under General Statutes § 33-929 (e), which provides that a foreign corporation transacting business in this state without first having obtained a certificate of authority from the secretary of the state in accordance with General Statutes § 33-920[10] "shall be subject to suit in this state upon any cause of action arising out of such business."[11] The plaintiff claimed that the court had personal jurisdiction over Cerullo under two separate subdivisions of § 52-59b (a), namely, subdivision (1), which vests the court with jurisdiction over a nonresident individual as to a cause of action arising from any business transacted by that individual in this state, and subdivision (3), which vests the court with jurisdiction over a nonresident individual as to a cause of action arising from, inter alia, the commission of a tortious act outside the state causing injury to a person or property within the state if that individual expects or reasonably should expect the tortious act to have consequences in the state and he or she derives substantial revenue from interstate commerce. See General Statutes § 52-59b (a) (1) and (3) (B).

In accordance with Practice Book § 10-31 (b), the plaintiff filed an affidavit in support of his objection to the defendants' motion to dismiss. In his affidavit, the plaintiff alleged, inter alia, that (1) he had retained the

[10] The plaintiff has asserted, both in his brief filed with the trial court in support of his objection to the motion to dismiss and in his brief to this court, that Cerullo & Company has not obtained a certificate of authority from the secretary of the state in accordance with § 33-920. Cerullo & Company has not denied that assertion. For purposes of this appeal only, therefore, we assume that Cerullo & Company has not obtained a certificate under § 33-920.

[11] We note that the plaintiff does not claim that the trial court has personal jurisdiction over Cerullo & Company under § 33-929 (f), which applies to, inter alia, a lawsuit against a foreign corporation brought by a resident of this state, regardless of whether such foreign corporation is transacting business in this state, on any cause of action arising out of certain enumerated activities.

defendants to provide accounting services, (2) the defendants negligently had prepared his New York and Connecticut income tax returns, (3) he had suffered damages as a result of the defendants' negligent preparation of his income tax returns, (4) the defendants had derived revenue from their preparation of his Connecticut income tax returns, and (5) the defendants knew that the plaintiff resided in Connecticut and, therefore, should have anticipated that their actions on his behalf would have consequences in Connecticut.

In addition to the affidavits, the trial court held a hearing on the defendants' motion to dismiss. Only Cerullo, however, appeared and testified at that hearing. Although Cerullo's testimony essentially mirrored the allegations contained in his affidavit, he did add that not more than 1 percent of Cerullo & Company's annual income is derived from accounting services "having [some] connection with the state of Connecticut." Cerullo also testified that the vast majority of the plaintiff's income was derived from his employment in New York as an investment banker.

Following the hearing, the trial court concluded that it lacked personal jurisdiction over the defendants under the applicable long-arm statutes. In support of its conclusion, the court stated: "Reviewing the totality of circumstances in this case, it is apparent that the controversy involves preparation of New York state income tax returns by a New York firm for an individual who worked in New York. There is no evidence that the defendants solicited business in Connecticut. [Because] their contacts with this state have been minimal, this court cannot say that the defendants should have anticipated litigation in this forum. . . .

"This court has considered [the] quantity and quality of the contacts involved in this case. There is no evidence that any of the contacts at issue occurred in

Connecticut. There is no evidence that the defendants solicited business in Connecticut. There is no evidence that they derived anything but minimal income from Connecticut residents and businesses. The defendants maintain a New York state accounting practice. They met with the . . . plaintiff in New York. All correspondence has been directed to New York state officials.

"This court has also considered the connection between the alleged contacts and the cause of action in this matter, [and] the interests of this forum in the underlying action. The core complaint involved professional malpractice in the preparation of New York state income tax returns. These allegations have no connection to this state. [In addition, the] trial witnesses will be the parties and officials from the . . . tax department." (Citations omitted.) The court thereupon rendered judgment dismissing the plaintiff's action.

On appeal, the plaintiff challenges the determination of the trial court that it does not have personal jurisdiction over both Cerullo & Company and Cerullo under §§ 33-929 and 52-59b, respectively. We reject the plaintiff's claims.[12]

Before addressing the merits of the plaintiff's claim, we note, preliminarily, that "[i]n ruling [on] whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint,

---

[12] We note that the trial court also concluded that the defendants' actions "did [not] satisfy the minimum contacts required under the due process clause of the fourteenth amendment to the [United States] constitution." "The federal due process clause permits state courts to exercise in personam jurisdiction over a nonresident corporate [or individual] defendant that has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." (Internal quotation marks omitted.) *Knipple* v. *Viking Communications, Ltd.*, 236 Conn. 602, 606 n.6, 674 A.2d 426 (1996). We do not reach the plaintiff's challenge to the trial court's conclusion in view of our determination that the trial court correctly concluded that it lacked jurisdiction over the defendants under the applicable long-arm statutes.

including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." (Internal quotation marks omitted.) *Oliphant* v. *Commissioner of Correction*, 274 Conn. 563, 568, 877 A.2d 761 (2005). Furthermore, "[i]f a challenge to the court's personal jurisdiction is raised by a defendant, either by a foreign corporation or by a nonresident individual, the plaintiff must bear the burden of proving the court's jurisdiction." *Knipple* v. *Viking Communications, Ltd.*, 236 Conn. 602, 607, 674 A.2d 426 (1996). Finally, a challenge to the jurisdiction of the court presents a question of law over which our review is plenary. See, e.g., *Oliphant* v. *Commissioner of Correction*, supra, 568.

I

We begin with the plaintiff's contention that the trial court incorrectly concluded that it lacked personal jurisdiction over Cerullo both under § 52-59b (a) (1) and under § 52-59b (a) (3) (B). We address each of these statutory provisions in turn.

A

As we have explained, under § 52-59b (a) (1), a court possesses personal jurisdiction over a nonresident individual with respect to a cause of action arising from any business transacted in this state by that individual. The crux of the plaintiff's claim is that Cerullo's preparation of his Connecticut income tax returns satisfies the statutory requirement of transacting business in this state. The plaintiff further claims that Cerullo's preparation of his Connecticut and New York income tax returns are so interrelated that the cause of action in the present case necessarily arises from the preparation of both sets of returns, including the Connecticut returns.

With respect to the issue of whether the preparation of Connecticut income tax returns in New York by a New York accountant properly may be deemed to constitute transacting business in this state for purposes of § 52-59b (a) (1), we note that, although the term "[t]ransacts any business" is not defined by statute, we previously have construed the term "to embrace a single purposeful business transaction." *Zartolas* v. *Nisenfeld*, 184 Conn. 471, 474, 440 A.2d 179 (1981) (looking to identical New York statute for guidance in interpreting § 52-59b);[13] see also *Kreutter* v. *McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 522 N.E.2d 40, 527 N.Y.S.2d

---

[13] In *Zartolas*, the named plaintiff, Andrew Zartolas, brought an action against the defendants, A. Eli Nisenfeld and Esther Nisenfeld, for the alleged breach of covenants in a warranty deed that had been executed in Iowa and which conveyed to Zartolas certain real property located in Connecticut. *Zartolas* v. *Nisenfeld*, supra, 184 Conn. 471–72. The Nisenfelds filed a motion to dismiss for lack of personal jurisdiction, which the trial court granted. See id., 473. On appeal to this court, Zartolas claimed that, by executing a warranty deed for the sale of property located in Connecticut, the Nisenfelds had transacted business in Connecticut for purposes of § 52-59b (a) (1). See id., 473–74. We agreed, concluding that "[t]he execution of a warranty deed pursuant to a sale of real property is a legal act of a most serious nature. It uses terms and procedures commonly associated with business and involves a financial transaction. The execution of such a deed clearly falls within the appropriately broad meaning of the term 'business' in . . . § 52-59b." Id., 475. We further explained that the Nisenfelds' "execution of the warranty deed in Iowa [did] not negate the transaction's connections with Connecticut. . . . The [Nisenfelds'] purposeful Connecticut related activity suffice[d] to locate this transaction . . . within this state despite the absence of allegations that the sale or closing occurred here; or that they or anyone acting for them solicited [Zartolas'] purchase or entered this state to deal with [Zartolas]. The deed described the land as located here and designated it by reference to records maintained here. By owning land in Connecticut the [Nisenfelds] invoked the benefits and protection of Connecticut's laws of real property, including as an incident of ownership the right to sell the property. If the [Nisenfelds] breached their warranties, the breach occurred because of acts committed here. The warranties in the deed clearly anticipate[d] litigation in Connecticut, which is the only forum that can determine title to Connecticut land. . . . Thus, the fundamental incidents of this warranty deed render[ed] the [Nisenfelds'] purposeful execution of it a 'transaction of any business within this state.' " (Citations omitted.) Id., 475–76.

195 (1988) (under New York long-arm statute, proof of one transaction in New York is sufficient to invoke jurisdiction, even though defendant never entered New York, as long as defendant's activities in New York were purposeful and there was substantial relationship between transaction and claim asserted). Moreover, a nonresident individual who has not entered this state physically nevertheless may be subject to jurisdiction in this state under § 52-59b (a) (1) if that individual has "invoked the benefits and protection of Connecticut's laws" by virtue of his or her "purposeful Connecticut related activity . . . ." *Zartolas* v. *Nisenfeld*, supra, 475; see also *Hanson* v. *Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958) (determination of whether exercise of personal jurisdiction satisfies due process "will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws").

In the present case, however, the defendants derived only minimal income from Connecticut residents, did not solicit business in Connecticut and did not promote themselves as a national accounting firm. With respect to the professional accounting services that the plaintiff retained the defendants to provide, the defendants performed those services exclusively in New York, met with the plaintiff exclusively in New York and corresponded exclusively with New York tax officials. Moreover, the plaintiff had retained the defendants to prepare federal and state tax returns on income earned in New York. Although it is true, of course, that the plaintiff resides in Connecticut and that Cerullo prepared the plaintiff's Connecticut income tax returns, we agree with the trial court that those facts alone are insufficient to warrant a determination that the profes-

sional services rendered by Cerullo constituted the transacting of business in this state within the meaning of § 52-59b (a) (1). See *Rosenblit* v. *Danaher*, 206 Conn. 125, 138, 140–41, 537 A.2d 145 (1988) (Massachusetts attorney named as defendant in action alleging that he negligently had represented plaintiffs in connection with Massachusetts development project was not subject to jurisdiction in this state under § 52-59b [a] [1] even though Massachusetts attorney had business meeting with plaintiff in Connecticut). In other words, any relationship or nexus between Cerullo's activities and this state simply is too attenuated to support the conclusion that the accounting services Cerullo performed for the plaintiff constituted transacting business in this state for purposes of § 52-59b (a) (1).[14]

Even if we were to reach a contrary conclusion with respect to whether Cerullo reasonably may be deemed to have transacted business in this state, the plaintiff cannot meet the second requirement of § 52-59b (a) (1),

---

[14] The plaintiff contends that *Gerber Trade Finance, Inc.* v. *Davis, Sita & Co., P.A.*, 128 F. Sup. 2d 86 (D. Conn. 2001), supports his claim that the trial court improperly determined that it lacked jurisdiction over Cerullo. In that case, the plaintiff, Gerber Trade Finance, Inc. (Gerber), a corporation based in New York and authorized to do business in Connecticut, brought an action based on diversity jurisdiction in federal court against the defendant, Davis, Sita and Company (Davis), a Maryland accounting firm, for malpractice stemming from its allegedly negligent audit of a third party, The Gourmet Source, Inc. (Gourmet), a Delaware corporation with its sole place of business in Connecticut. Id., 88–89. In its complaint, Gerber alleged that, as one of Gourmet's principal secured creditors, it had sustained significant economic loss as a result of its reasonable reliance on Davis' negligent audit of Gourmet. Id., 89. Davis filed a motion to dismiss for lack of personal jurisdiction, which the District Court denied. Id., 89, 93. The District Court concluded that it had jurisdiction over Davis under § 33-929 (e), Connecticut's corporate long arm statute, because Davis' vice president had visited Gourmet's office in Connecticut on two separate occasions to review Gourmet's files and to perform accounting and auditing services. Id., 91–92. Because Davis performed substantial accounting work in this state, *Gerber* is readily distinguishable from the present case, which involves no similar contact with this state.

namely, that his cause of action against Cerullo arose from Cerullo's business activity in this state. "In determining whether the [plaintiff's] cause of action arose from the defendants' transaction of business within this state we do not resort to a rigid formula. Rather, we balance considerations of public policy, common sense, and the chronology and geography of the relevant factors." *Zartolas* v. *Nisenfeld,* supra, 184 Conn. 477. As the trial court correctly observed, the plaintiff's complaint is predicated entirely on the defendants' alleged negligence in their handling of the plaintiff's New York income tax liability. Specifically, the plaintiff alleged that the defendants improperly had (1) advised him regarding his New York income tax liability, (2) missed two deadlines to petition the tax department regarding his income tax liability in New York, (3) advised him regarding a settlement offer tendered by the tax department, (4) prepared his New York income tax returns, and (5) determined his taxable income and tax liability in New York. Indeed, it was the reclassification of the plaintiff's residency status in New York by the tax department and subsequent penalties and interest incurred as a result thereof that gave rise to the present action.

The plaintiff nevertheless maintains that, because he ultimately received a larger credit toward his Connecticut tax liability as a result of the improper calculation of his New York income tax liability, the preparation of his Connecticut income tax returns is so closely and directly related to the preparation of his New York income tax returns that his claim against Cerullo reasonably may be characterized as arising out of the preparation of both sets of returns. It is inarguable that the change in the plaintiff's New York income tax liability necessarily affected his Connecticut income tax liability. See footnote 5 of this opinion. Indeed, Cerullo testified concerning the interrelationship between income

tax returns filed by one individual in multiple states. The interrelationship between the plaintiff's Connecticut income tax returns and his New York income tax returns, however, does not alter the fact that the claims that the plaintiff raises in the present action do not arise from Cerullo's preparation of the plaintiff's Connecticut income tax returns but, rather, from Cerullo's preparation of the plaintiff's New York income tax returns. In other words, although the magnitude of the plaintiff's Connecticut income tax liability is directly affected by the magnitude of his New York income tax liability, his claim against Cerullo relates solely to the allegedly negligent preparation of his New York income tax returns; his claim against Cerullo does not arise out of the preparation of his Connecticut income tax returns. Accordingly, the plaintiff cannot prevail on his claim that the court has personal jurisdiction over Cerullo under § 52-59b (a) (1).

B

The plaintiff also contends that the trial court has personal jurisdiction over Cerullo under § 52-59b (a) (3) (B) because (1) Cerullo allegedly committed a tortious act outside of Connecticut, (2) that act caused injury to the plaintiff within this state, (3) the plaintiff's cause of action arises from Cerullo's tortious act, (4) Cerullo expected or reasonably should have expected that the act would have consequences in Connecticut, and (5) Cerullo derives substantial revenue from interstate commerce. We disagree with the plaintiff that § 52-59b (a) (3) (B) vests the court with personal jurisdiction over Cerullo.

Even if we assume, arguendo, that the plaintiff's allegations of professional negligence against Cerullo satisfy the first four elements of § 52-59b (a) (3) (B), the plaintiff has failed to meet the final statutory requirement, namely, that Cerullo derives substantial revenue

from interstate commerce.[15] Although the plaintiff alleged in his complaint that Cerullo "derives substantial revenue from clients in Connecticut and through interstate commerce in general," the sole support for that allegation stems from the facts that the plaintiff paid Cerullo & Company to prepare his income tax returns over a period of several years and that Cerullo & Company earns up to 1 percent of its annual income from accounting services bearing some relationship to the state of Connecticut. According to the defendants, however, Cerullo & Company derives only "minimal fee revenues from persons or entities located in Connecticut," does not advertise or promote itself as a national accounting firm, and is "not regularly engaged in providing accounting services on an interstate basis . . . ."

Although this court never has been required to determine the meaning of "derives substantial revenue from interstate or international commerce" for purposes of § 52-59b (a) (3) (B), New York courts have concluded, in interpreting their identically worded long arm statute,

---

[15] We note that, although we need not decide the issue, it is uncertain whether the plaintiff can satisfy the requirement of § 52-59b (a) (3) (B) that Cerullo's alleged malpractice caused injury to him in this state. Indeed, the plaintiff received a tax *credit* in this state as a result of Cerullo's allegedly negligent preparation of his New York income tax returns. From all that appears, the situs of the plaintiff's injury is New York, where all of the critical events occurred. See *Bross Utilities Service Corp.* v. *Aboubshait*, 489 F. Sup. 1366, 1374 (D. Conn.) (Construing § 52-59b [a] [3] and observing that, under nearly identical provisions of New York's long arm statute, "it has repeatedly been held that the [fact] that a plaintiff who has lost profits or suffered other pecuniary injury is domiciled or incorporated in that state or that New York is the plaintiff's principal place of business [does] not necessarily make New York the situs of the plaintiff's injury. . . . Rather, in the context of commercial torts, the place of injury is generally the place where the critical events associated with the dispute took place." [Citations omitted; internal quotation marks omitted.]), aff'd mem., 646 F.2d 559 (2d Cir. 1980). Because we conclude that the plaintiff has failed to satisfy the "substantial revenue" element of § 52-59b (a) (3) (B), however, we do not address whether the plaintiff can establish that Cerullo's alleged negligence caused him harm in this state.

that the "substantial revenue" requirement "is designed to narrow the long-arm reach to preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within the [s]tate but whose business operations are of a local character . . . ." (Citation omitted; internal quotation marks omitted.) *LaMarca* v. *Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 215, 735 N.E.2d 883, 713 N.Y.S.2d 304 (2000), quoting *Ingraham* v. *Carroll*, 90 N.Y.2d 592, 599, 687 N.E.2d 1293, 665 N.Y.S.2d 10 (1997). Put differently, " 'substantial revenue' means enough revenue to indicate a commercial impact in the forum, such that a defendant fairly could have expected to be haled into court there." *Fogle* v. *Ramsey Winch Co.*, 774 F. Sup. 19, 23 (D.D.C. 1991). Because of the indefinite nature of the "substantial revenue" requirement, the determination of whether that jurisdictional threshold has been met in any particular case necessarily will require a careful review of the relevant facts and frequently will entail an evaluation of both the total amount of revenue involved and the percentage of annual income that that revenue represents. Compare *Founding Church of Scientology of Washington, D.C.* v. *Verlag*, 536 F.2d 429, 432–33 (D.C. Cir. 1976) (1 percent of magazine's gross revenue, or $26,000, constituted "substantial revenue" on basis of low unit price of magazines) with *Murdock* v. *Arenson International USA, Inc.*, 157 App. Div. 2d 110, 113–14, 554 N.Y.S.2d 887 (1990) (0.05 percent of corporate defendant's total sales, totaling $9000, did not satisfy "substantial revenue" requirement).

In the present case, the defendants acknowledge that up to 1 percent of their annual income is derived from accounting services "having [some] connection" with this state. We do not know, however, how much that represents in actual revenue because the record is devoid of any indication of the amount of the defendants' annual income. Moreover, the plaintiff failed to

offer any evidence, other than his assertion that he had · paid the defendants for the preparation of his income tax returns for five years, to support his claim that Cerullo received "substantial revenue from interstate . . . commerce" within the meaning of § 52-59b (a) (3) (B). Indeed, the record is silent as to how much the plaintiff paid Cerullo or Cerullo & Company for their accounting services. Furthermore, although up to 1 percent of the income of Cerullo & Company is derived from Connecticut clients or otherwise bears some connection to Connecticut, there is nothing in the record to establish either the percentage or the amount of income that Cerullo himself derived from services performed for Connecticut residents. Finally, other than the small percentage of revenue that the defendants receive from their performance of Connecticut related accounting services, the plaintiff has failed to demonstrate that the defendants derive any other income from interstate commerce. Because the burden of proving jurisdiction over the person is on the party asserting it; see *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 54, 459 A.2d 503 (1983); it was incumbent upon the plaintiff, in light of the sworn statements and testimony offered by Cerullo in support of his jurisdictional challenge, to present evidence satisfying the "substantial revenue" requirement of § 52-59b (a) (3) (B). In the absence of such a showing, and because the plaintiff also has failed to demonstrate that Cerullo transacted business in this state within the meaning of § 52-59b (a) (1), the trial court properly granted the motion to dismiss, with respect to Cerullo, for lack of personal jurisdiction.[16]

---

[16] The plaintiff asserts that *Mashantucket Pequot Tribe* v. *Redican*, 309 F. Sup. 2d 309 (D. Conn. 2004), supports his jurisdictional claim. In that case, the plaintiff, the Mashantucket Pequot Tribe (tribe), the owners of Foxwoods Resort and Casino (Foxwoods), brought a trademark action against the defendant, Raymond Redican, Jr., a citizen of Massachusetts, based on Redican's registration of two domain names, FOXWOOD.ORG and FOXWOOD.COM, the latter of which was operated by Redican as a website that offered advertisements and enabled website users to access online

## II

## We next turn to the plaintiff's contention that the trial court incorrectly concluded that it lacks jurisdic-

casinos and marketers. Id., 310–12. Redican filed a motion to dismiss for lack of personal jurisdiction, which the District Court denied on the ground that jurisdiction was proper under § 52-59b (a) (3) (B). Id., 311, 313–14. In reaching its conclusion, the District Court relied on the fact that the website's advertising alone had generated between $600 and $1000 annually, that the site had received three times as many hits as Foxwoods.com, the official website of the tribe, and that, as part of his efforts to sell his Foxwood domain name registrations, Redican had earned an additional $2600 in revenue from the sale of two other domain names. Id., 312, 315. In addition, the District Court noted that Redican had made at least two business related visits to the tribe in Connecticut and had made multiple attempts, by e-mail or telephone, to arrange with tribe officials to sell the domain names, "and thus had . . . 'physical' contacts with the state of Connecticut that were not insubstantial." Id., 315. The District Court further observed that Redican, in establishing a website that targeted Foxwoods customers, "had to recognize that it was likely that his site would ultimately appear on computer screens in Connecticut and across the country . . . [and] that, by borrowing the Foxwood(s) trademark, he could do significant damage to the image of Foxwoods and its marketing efforts in Connecticut." Id., 316. The District Court finally noted that "Foxwoods, as a result of its location in Connecticut, presumably attracts a greater percentage per population of Connecticut residents than most other states . . . ." Id.

The plaintiff in the present case maintains that *Mashantucket Pequot Tribe* stands for the proposition that $600 to $1000 of Connecticut related income satisfies the "substantial revenue" requirement of § 52-59b (a) (3) (B). We disagree. The District Court in *Mashantucket Pequot Tribe* made no finding that that amount of income, standing alone, meets the statutory requirement. Rather, the District Court concluded that the exercise of jurisdiction over Redican was proper under Connecticut's long arm statute due to multiple factors, including the fact that Redican's website had generated up to $1000 in advertising revenue, that Redican had earned an additional $2600 as a result of his efforts to sell the Foxwood domain names, that Redican had visited the tribe in Connecticut at least twice, and that, in view of the nature of Redican's business activities, he must have known that his actions were likely to have a significant impact in Connecticut. See id., 315–16. Accordingly, we reject the plaintiff's contention that *Mashantucket Pequot Tribe* purports to establish a minimum revenue threshold for purposes of § 52-59b. Moreover, even if *Mashantucket Pequot Tribe* could be construed as adopting such a threshold, the plaintiff in the present case has not proffered any evidence to establish the actual amount of income that the defendants have derived from their performance of accounting services for Connecticut clients.

tion over Cerullo & Company under the corporate long-arm statute, namely, § 33-929 (e), which vests our courts with jurisdiction over any foreign corporation that transacts business in this state without first having obtained a certificate of authority from the secretary of the state in accordance with § 33-920 (a) when the cause of action arises out of such business. Our analysis under § 33-929 (e) is twofold. We first must determine whether Cerullo & Company transacted business in this state without authorization to do so as required by § 33-920 (a),[17] and, if so, we then must determine whether the plaintiff's claim against Cerullo & Company arose out of such business. See *Wilkinson* v. *Boats Unlimited, Inc.*, 236 Conn. 78, 86, 670 A.2d 1296 (1996). "Whether . . . a foreign corporation is transacting business in this state under [§ 33-920] must be determined on the complete factual picture presented in each case." *Eljam Mason Supply, Inc.* v. *Donnelly Brick Co.*, 152 Conn. 483, 485, 208 A.2d 544 (1965); see also *Peters Production, Inc.* v. *Dawson*, 182 Conn. 526, 529, 438 A.2d 747 (1980).

Relying on the same arguments that he advanced in support of his jurisdictional claim under § 52-59b, the plaintiff contends that the trial court has jurisdiction over Cerullo & Company under § 33-929 (e) because Cerullo & Company's preparation of the plaintiff's Connecticut income tax returns constitutes the transacting of business in this state and because his cause of action arises out of that business. We disagree with both prongs of the plaintiff's argument. With respect to his claim that Cerullo & Company transacted business in this state, this court previously has observed that the phrase "[t]ransacts any business" in General Statutes § 52-59b has a broader meaning than the phrases "trans-

---

[17] As we have indicated; see footnote 10 of this opinion; for purposes of this appeal, we assume that Cerullo & Company has not received a certificate from the secretary of the state authorizing it to transact business in this state.

act business" or "transacts business" in the corporate long-arm statutes.[18] *Zartolas* v. *Nisenfeld*, supra, 184 Conn. 476 n.4. In the absence of any claim or showing by the plaintiff that Cerullo & Company has a different, more substantial relationship to this state than Cerullo, and because we already have concluded that the trial court properly determined that it lacks personal jurisdiction over Cerullo under § 52-59b, it follows, a fortiori, that Cerullo & Company did not transact business in this state within the meaning of § 33-929 (e).[19]

Even if we assume, arguendo, that Cerullo & Company did transact business in this state within the meaning of § 33-929 (e), the plaintiff cannot satisfy the second requirement of § 33-929 (e), namely, that his claim against Cerullo & Company arose out of that business. See *Lombard Bros., Inc.* v. *General Asset Management Co.*, 190 Conn. 245, 253, 460 A.2d 481 (1983) (explaining that statutory precursor to § 33-929 [e] "affords the plaintiff no jurisdictional bas[is] in the absence of allegations that the plaintiff's causes of action arose out of the defendant's transaction of business in Connecticut"); see also id., 252 ("the statutory language mandating 'any cause of action arising out of [the transaction of] such business' requires some showing that the present litigation bears some connection with the business conducted by the foreign corporation in this state"). It

[18] We note that, under § 33-920 (b), certain enumerated business activities do not constitute the transacting of business for purposes of § 33-920 (a), and that, under § 33-920 (c) those activities that are expressly excluded are not exhaustive. See footnote 9 of this opinion. Because § 33-929 (e) applies only to foreign corporations that transact business in this state in violation of the provisions of § 33-920, it is apparent that the legislature has sought to limit the breadth of § 33-929 (e).

[19] The plaintiff relies on *Gerber Trade Finance, Inc.* v. *Davis, Sita & Co., P.A.*, 128 F. Sup. 2d 86, 91–92 (D. Conn. 2001), for the proposition that practicing public accountancy constitutes transacting business for purposes of § 33-920. In contrast to the facts of *Gerber Trade Finance, Inc.*, however, the record in the present case does not support the plaintiff's claim that the defendants were engaged in the practice of public accounting in this state.

is abundantly clear that the plaintiff's cause of action arises out of the allegedly negligent preparation of his New York income tax returns, not from the preparation of his Connecticut income tax returns. Indeed, the plaintiff's cause of action has no connection with or relationship to the preparation of his Connecticut income tax returns. The plaintiff, therefore, has failed to demonstrate that his claim arises out of any business that Cerullo & Company conducted in this state, as required by § 33-929 (e).

The judgment is affirmed.

In this opinion the other justices concurred.