# THE DOYLE GROUP *v.* ALASKANS FOR CUDDY
## (AC 34618)

DiPentima, C. J., and Lavine and Dupont, Js.

Argued April 16—officially released October 8, 2013

*Michael Smiley*, for the appellants (defendants).

*Terence D. Mariani*, for the appellee (plaintiff).

*Opinion*

LAVINE, J. In this breach of contract action, the defendants, Alaskans for Cuddy and David Cuddy, appeal from the judgment of the trial court, rendered after a jury trial, in favor of the plaintiff, The Doyle Group, Inc. The defendants claim that the trial court improperly (1) asserted personal jurisdiction over Cuddy, (2) denied their motion for a directed verdict,

and (3) denied their motion to set aside the verdict. We affirm the judgment of the trial court.

The following facts as reasonably could have been found by the jury are relevant to this appeal. The plaintiff is a Connecticut based political consulting firm located in Hartford. In late 2007 into early 2008, Cuddy contemplated running in Alaska as a candidate for the United States Senate against then Senator Theodore "Ted" Stevens. In late February, 2008, following discussions between Cuddy and a principal of the plaintiff, Thomas J. D'Amore, Jr., the plaintiff's president, John A. Doyle, sent a proposed contract to Cuddy, who signed the contract on March 1, 2008. Cuddy sent the contract to the plaintiff in Connecticut along with his personal check for $10,000. On March 5, 2008, Doyle signed the contract and deposited Cuddy's check in the plaintiff's Webster Bank account.

The first paragraph of the contract identifies the plaintiff and its address in Hartford. Among other things, the contract provides: "The first $10,000 payment shall be due on or before March 3, 2008 and subsequent payments on the first day of each of the succeeding months for which this Contract is in force. . . .

"It is understood and agreed that the foregoing payments are to cover all in-state expenses of [the plaintiff] . . . . Amounts incurred for out-of-state activities and/ or for expenses for the retention of [nonplaintiff] legal or other professional services shall only be reimbursed by the Client if he approves such expenses in writing in advance.

"This Contract is effective March 3, 2008 and shall be in force for 3 months."

In March and April, 2008, the plaintiff performed consulting work from Connecticut for the defendants. Consulting services were provided via numerous e-mails

and telephone calls to Cuddy and his agents. The relationship between Cuddy and the plaintiff deteriorated, however, and Cuddy terminated the contract on April 10, 2008, without further payment to the plaintiff.

On May 2, 2008, the plaintiff commenced this action against Alaskans for Cuddy for breach of contract by service of process on the secretary of the state. On October 6, 2008, the court, *Pickard, J.*, granted the plaintiff's motion to cite in Cuddy as a party defendant.[1] On November 13, 2008, Cuddy filed a motion to dismiss the claims against him, alleging pursuant to General Statutes § 52-59b (a) (1) that the court lacked personal jurisdiction over him. On April 7, 2009, the court, *Gallagher, J.*, denied the motion.

The case was tried to a jury in January, 2012. The jury returned a verdict in favor of the plaintiff on all counts and awarded the plaintiff $20,000 in damages as to both defendants. The court, *Roche, J.*, denied the defendants' subsequent motion to set aside the verdict. This appeal followed. Further facts and procedural history are set forth as required.

I

LONG ARM JURISDICTION

The defendants claim that Judge Gallagher improperly denied Cuddy's motion to dismiss for lack of personal jurisdiction over Cuddy. Specifically, they claim that Connecticut's long arm statute, § 52-59b, does not apply to Cuddy because he did not " 'purposefully' direct his activity toward Connecticut." We disagree.

In November, 2008, Cuddy filed a motion to dismiss the action against him to which he attached an affidavit and a memorandum of law. Among other things, Cuddy attested that he was not a resident of Connecticut, he

---

[1] Attorney Michael Smiley accepted service of process on behalf of Cuddy.

signed the subject contract outside of Connecticut, he never physically has been present in Connecticut for any purpose related to the subject of the cause of action, he never has engaged in any business activity in Connecticut, he has no physical presence in Connecticut, and he owns no property, bank accounts, or business interests in Connecticut. Cuddy also attested that he is not subject to any regulation by the state of Connecticut.

The plaintiff objected to Cuddy's motion to dismiss and submitted an affidavit from D'Amore. Among other things, D'Amore attested that the plaintiff offers political consulting services and has offices only in Hartford; Cuddy had contacted him pursuant to a recommendation from Thomas Senter; following several telephone calls that were either received in or originated from Connecticut, the parties agreed to enter into a political consulting contract; Cuddy requested a proposal setting out the contract, which Doyle drafted in Connecticut and sent to Cuddy in Alaska; Cuddy signed the contract and returned it with his personal check in the amount of $10,000 to the plaintiff in Hartford; the plaintiff performed its services in Connecticut; the contract prohibited the plaintiff from undertaking any activities outside Connecticut without advance written permission from Cuddy; and the plaintiff holds itself out as a Connecticut based consulting firm.

In denying Cuddy's motion to dismiss, Judge Gallagher stated that Cuddy "has transacted business in [Connecticut] by virtue of his contracting [with] a Connecticut based [company and] by e-mails. See [General Statutes] § 52-59b."[2]

---

[2] Although the defendants claim that the court improperly denied Cuddy's motion to dismiss on the basis of his e-mail communication, we need not reach that claim as we conclude that Judge Gallagher properly determined that Cuddy transacted business in this state when he entered into a contract with the plaintiff.

"[A] challenge to the jurisdiction of the court presents a question of law over which . . . review is plenary." (Internal quotation marks omitted.) *Kenny* v. *Banks*, 289 Conn. 529, 532, 958 A.2d 750 (2008). If a defendant challenges a court's personal jurisdiction, then the plaintiff bears the burden of proving the court's jurisdiction. *Ryan* v. *Cerullo*, 282 Conn. 109, 118, 918 A.2d 867 (2007). "When a defendant challenges personal jurisdiction . . . [t]he trial court must first decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the [defendant]."[3] (Internal quotation marks omitted.) *Kenny* v. *Banks*, supra, 533.

Accordingly, this appeal also "presents a question of statutory interpretation that requires . . . plenary review. . . . When construing a statute, [a court's] fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, [a court] seek[s] to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs [courts] first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the

---

[3] "If the statutory requirements [are] met, [the trial court's] second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." (Internal quotation marks omitted.) *Kenny* v. *Banks*, supra, 289 Conn. 533. The defendants have not raised any due process claims in this appeal. We therefore limit our review of this issue to whether § 52-59b authorizes assertion of jurisdiction over Cuddy. See *Packer* v. *Board of Education*, 246 Conn. 89, 128, 717 A.2d 117 (1998) (*Palmer, J.*, concurring) (courts have duty to eschew unnecessary determinations of constitutional questions).

legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Citation omitted; internal quotation marks omitted.) *Caciopoli* v. *Lebowitz*, 309 Conn. 62, 69, 68 A.3d 1150 (2013).

Section 52-59b grants jurisdiction to the Superior Court over nonresident individuals.[4] Our Supreme Court "has explained that § 52-59b (a) (1) authorizes jurisdiction over nonresidents who transact any business within the state provided that the cause of action arises out of such transaction." *New London County Mutual Ins. Co.* v. *Nantes*, 303 Conn. 737, 745, 36 A.3d 224 (2012). "[A]lthough the term '[t]ransacts any business' is not defined by statute, [our Supreme Court has] construed the term 'to embrace a single purposeful business transaction.' " *Ryan* v. *Cerullo*, supra, 282 Conn. 119.

In the present case, the court reasonably could have concluded from the allegations of the amended complaint and the affidavits of the parties that Cuddy transacted business in Connecticut. Although the court did not provide a detailed analysis to support its conclusion, we presume, in the absence of evidence to the contrary, that the court acted in accordance with the law. See *Kaczynski* v. *Kaczynski*, 294 Conn. 121, 129, 981 A.2d 1068 (2009). Moreover, our review of the record demonstrates there is a factual basis that supports the court's legal conclusion. The first paragraph of the contract recites that the plaintiff is a Connecticut company, and

---

[4] General Statutes § 52-59b provides in relevant part: "(a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual . . . who in person or through an agent . . . [t]ransacts any business within the state . . . ."

that it has no presence outside of Connecticut.[5] Pursuant to his affidavit, Cuddy engaged in negotiations with the plaintiff, signed the contract for services to be performed by the plaintiff in Connecticut, mailed the contract and his personal check to the plaintiff in Connecticut, and engaged in telephone calls and e-mail communication arising from the contract. We conclude that the allegations of the amended complaint and the parties' affidavits constitute conduct that falls within the scope of "[t]ransacts any business within the state" pursuant to § 52-59b.

"[A] nonresident individual who has not entered this state physically nevertheless may be subject to jurisdiction in this state under § 52-59b (a) (1) if that individual has invoked the benefits and protection of Connecticut's laws by virtue of his or her purposeful Connecticut related activity . . . ." (Internal quotation marks omitted.) *Ryan* v. *Cerullo*, supra, 282 Conn. 120. "[D]etermination of whether exercise of personal jurisdiction satisfies due process will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws . . . ." (Internal quotation marks omitted.) Id., quoting *Hanson* v. *Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958).

In the present case, the allegations of the amended complaint are sufficient to demonstrate that Cuddy purposefully conducted activities in this state when he

---

[5] On appeal, the defendants argue that evidence adduced at trial indicates that Cuddy believed that he had retained D'Amore's Washington, D.C. consulting firm, D'Amore, Hillsman, Oliver, and Barkley. Cuddy's affidavit in support of his motion to dismiss did not contain an attestation to that fact. Moreover, the jury determined that the defendants breached the contract with the plaintiff.

signed a contract in which he agreed to have the plaintiff provide political consulting services from Connecticut and mailed that contract along with his personal $10,000 check to the plaintiff at its place of business in Connecticut. Our conclusion is consistent with the one reached by our Supreme Court in *Zartolas* v. *Nisenfeld*, 184 Conn. 471, 440 A.2d 179 (1981). In *Zartolas*, the defendants signed a warranty deed in Iowa in order to convey to the plaintiffs land the defendants owned in Connecticut. Id., 472. The defendants were constructively served with process in Iowa and filed a motion to dismiss the breach of warranty action, claiming that the court lacked personal jurisdiction. Id., 473. In concluding that personal jurisdiction was appropriate, our Supreme Court noted that "the term 'transacts any business' extends beyond the typical commercial enterprise to include the execution of a warranty deed pursuant to a single sale of real property. . . . The execution of a warranty deed pursuant to a sale of real property is a legal act . . . [and] falls within the appropriately broad meaning of the term 'business' in . . . § 52-59b. . . . The defendants' execution of the warranty deed in Iowa does not negate the transaction's connections with Connecticut." (Citations omitted.) Id., 474–75.

In the present case, Cuddy signed the contract, which he mailed with his personal check to the plaintiff in Connecticut. He purposefully entered into a contract with a Connecticut business that was to perform and deliver services to the defendants from this state. The contract was a "typical commercial enterprise" and the contract constituted "a legal act," both falling within the broad meaning of the term "business" in § 52-59b. Id. As in *Zartolas*, where the execution of the deed in Iowa did not negate the transaction's connections with Connecticut, delivery of services in the present case to Alaska cannot divorce the transaction from this state. Similarly, that Cuddy personally has never entered this

state to deal with the plaintiff does not change the nature of the transaction of business here.

The defendants also contend that jurisdiction is inappropriate because Cuddy did not *transact business* in Connecticut and cite numerous authorities in support of that proposition. The defendants, however, have failed to explain how those cases relate to § 52-59b and the facts of the present case. "[Section] 52-59b (a) (1) authorizes jurisdiction over nonresidents who *transact any business* within the state provided that the cause of action arises out of such transaction." (Emphasis added; internal quotation marks omitted.) *New London County Mutual Ins. Co.* v. *Nantes,* supra, 303 Conn. 745. Our Supreme Court has clarified that "the phrase '*transacts any business*' in § 52-59b has a broader meaning than the phrases 'transact business' in [General Statutes] § 33-396; 'transacting business' in [General Statutes] § 33-397; and 'transacts business' in the repealed [General Statutes] § 52-59a . . . ." (Emphasis added.) *Zartolas* v. *Nisenfeld,* supra, 184 Conn. 476 n.4. Because "§§ 33-396 and 33-397 provide no guidance for interpreting § 52-59b," the cases construing those statutes and their particular language are inapposite. Id.

We already have determined that Cuddy engaged in a purposeful business transaction with the plaintiff in Connecticut. Because there is no meaningful distinction between "transacts any business" and "a single purposeful business transaction" in the present case, we need not further address this claim. Cuddy engaged in a purposeful business transaction in Connecticut as contemplated by § 52-59b, and we conclude that the trial court properly exercised personal jurisdiction over him.

II

MOTION FOR DIRECTED VERDICT

The defendants claim that Judge Roche improperly denied their motion for a directed verdict and let the

jury decide unambiguous questions regarding the construction of the parties' contract, which the court should have decided as a matter of law.[6] They also claim that there was insufficient evidence of Cuddy's personal liability to submit the question to the jury.[7] We decline to review the claims as they are inadequately briefed.

This court is "not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited." (Internal quotation marks omitted.) *Paoletta* v. *Anchor Reef Club at Branford, LLC*, 123 Conn App. 402, 406, 1 A.3d 1238, cert. denied, 298 Conn. 931, 5 A.3d 491 (2010).

The defendants here have provided no meaningful legal analysis on these issues. They make no attempt in either their principal brief or in their reply brief to apply, analogize from, or refer to precedential case law or applicable statutes. We therefore decline to review the claims.

---

[6] The plaintiff contends that the contract was ambiguous and the court properly let the jury decide whether the contract was for a ninety day term at $30,000 payable in three monthly installments of $10,000 each or three separate one month contracts for $10,000 per month.

[7] The plaintiff notes that the defendants failed to preserve this claim at trial. We agree with the plaintiff. "[This court] ordinarily do[es] not address issues that have not been properly raised before the trial court." *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 33, 717 A.2d 77 (1998); see also Practice Book § 60-5.

## III

### MOTION TO SET ASIDE VERDICT

The defendants claim that the court improperly denied their motion to set aside the verdict on the grounds of (1) insufficient evidence (a) of contract formation and (b) of the defendants' breach of the contract, and (2) evidence of impossibility that was improperly admitted into evidence. We disagree.

The defendants filed a motion to set aside the jury verdict, which the court denied in a memorandum of decision dated April 16, 2012. Before conducting its analysis, the court set forth the relevant legal principles. "The Appellate Court has set down certain guidelines concerning the setting aside of any jury verdict that may be rendered. Those cases basically hold that the court should not interfere with that deliberation process which may result in a verdict that the trial court may not have arrived at, but nevertheless is within the bounds of reason.

"The sifting and weighing of evidence is peculiarly the function of the trier. [N]othing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded to their testimony. . . . The trier is free to accept or reject, in whole or in part, the testimony offered by either party. . . . *Smith Brook Farms, Inc.* v. *Wall*, 52 Conn. App. 34, 37, 725 A.2d 987 (1999). . . . We note that [i]t is not the function of this court to sit as the seventh juror when we review the sufficiency of the evidence . . . rather, we must determine, in the light most favorable to sustaining the verdict, whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict. . . . In making this determination, [t]he evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable. . . . *Bosco* v. *Regan*, 102 Conn. App. 686, 696, 927 A.2d 325, cert. denied, 284

Conn. 914, 931 A.2d 931 (2007). The most favorable reasonable construction must be given to the circumstantial as well as to the direct evidence of what actually transpired. . . . *Elliott* v. *Larson*, 81 Conn. App. 468, 475, 840 A.2d 59 (2004).

"The fact finder in this case could find that there were ongoing contacts between the parties over how the subject contract was to be implemented. These contacts by phone, e-mails, and in person did not alter the terms or any particular conditions of the respective contractual obligations that could be found in the said contract signed on March 1 and 5, 2008, respectively. The contract had a unilateral term in the sense that the plaintiff with proper notice could terminate the contract if timely payments were not made by the defendants under the terms of the contract. In other words, the remaining two $10,000 payments due on April 1 and May 1, 2008, were unequivocal conditions. The jury could find that the defendants breached the contract by not making such payments. The fact that . . . Cuddy was not comfortable or pleased with the services being rendered by the plaintiff did not constitute a material breach by the plaintiff, and therefore, the defendants' contractual obligation for payments continued.

"The defendants attempted to raise by way of argument, that impossibility as a defense would allow *rescission* of the contract in favor of the defendants. The impossibility of performance by either party was not supported by the probative evidence that was submitted to the jury, and, therefore, it was not considered to be a legally sufficient ground that would be charged to the jury or the basis for any kind of directed verdict in favor of the defendants. See [*Dills* v. *Enfield*, 210 Conn. 705, 717–21, 557 A.2d 517 (1989); *Sutcliffe* v. *Fleet Boston Financial Corp.*, 108 Conn. App. 799, 809, 950 A.2d 544 (2008)]; 14 A. Corbin, Contracts, Impossibility (Rev. Ed. 2001) § 74.5, p. 27.

"The defendants' reliance on Practice Book § 15-8 is misplaced because that provision relates only to court, nonjury matters in which a plaintiff has failed to establish a prima facie case, and, therefore, the action is subject to dismissal. The court did take under review the defendants' Motion for Directed Verdict at the end of the plaintiff's and defendants' cases and, in effect, that motion was denied and the matter was submitted to the jury for its determination.

"Whatever machinations may have occurred between the parties and their representatives were something that the court does not place any probative value on. It does illustrate the fluid nature of the relationship between the parties and may allow a fact finder to come to different conclusions within the context of the subject contract. The jury could find that there was an ongoing obligation for payment by the defendants to the plaintiff for political consulting services that were being rendered in a substantive and meaningful way, although perhaps not to the liking of . . . Cuddy. The dissatisfaction by one party to a contract does not necessarily relieve that party of the obligations under the contract. See generally 13 S. Williston, Contracts (4th Ed. 2000) § 39:1, p. 508. Therefore, the defendants' various positions were not accepted by the fact finder and a verdict was rendered in favor of recovery for the plaintiff." (Emphasis in original; internal quotation marks omitted.)

On the basis of our review of the record, the law, and the court's memorandum of decision, we conclude that the court did not improperly deny the defendants' motion to set aside the verdict. The paucity of legal analysis in the defendants' brief does not convince us to the contrary.

The judgment is affirmed.

In this opinion the other judges concurred.