******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## JUSTINE LYONS *v.* BIRMINGHAM LAW OFFICE, LLC, ET AL.
### (AC 45631)
### (AC 45632)

Moll, Cradle and Westbrook, Js.

*Syllabus*

Pursuant to statute (§ 52-59b (a)), "a court may exercise personal jurisdiction over any nonresident individual [or] foreign partnership . . . who in person or through an agent: (1) Transacts any business within the state; (2) commits a tortious act within the state . . . [or] (3) commits a tortious act outside the state causing injury to person or property within the state . . . if such person or agent (A) regularly does or solicits business . . . or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . ."

The plaintiff appealed from the judgment of the trial court dismissing the underlying action against several defendants for lack of personal jurisdiction. The plaintiff's complaint alleged, inter alia, negligence against the defendants arising from their involvement in the sale of Vermont real property owned by D. The plaintiff was the longtime girlfriend of D and lived with him for years prior to his death in December, 2020. The plaintiff and D were Connecticut residents at all relevant times. In 2020, D's attorneys, B and B Co., represented D in the sale of the Vermont property to a buyer from Massachusetts represented by the buyer's attorneys, S and S Co. The plaintiff had no ownership interest in the Vermont property and was not a party to the real estate transaction. Throughout his representation of D in the sale of the Vermont property, B communicated with D at various times while D was in Connecticut. B was the sole member of B Co., a Vermont law firm, practiced law exclusively in Vermont, and was not admitted to the Connecticut bar. S Co. was located in and conducted business in Vermont and, although S had previously practiced law in Connecticut, she moved her law practice to Vermont in 2013 and retired from the practice of law in Connecticut in 2019. S Co. had represented clients from across the Northeast, as evidenced by the testimonials on its website from out-of-state clients, none of which were from a Connecticut resident. S was also listed as lead counsel for a party to a federal action in the United States District Court for the District of Connecticut as late as 2019, but the party that she represented was no longer actively involved in the action at that time. The sale of the Vermont property closed on December 23, 2020, and D's attorneys were instructed by D to have the buyer's attorneys wire the sale proceeds to the plaintiff's bank account. D's

attorneys forwarded the provided bank account information to the buyer's attorneys. On December 24, 2020, the buyer's attorneys attempted to wire the money to the account, but they could not do so because the provided account information was incorrect. The buyer's attorneys subsequently emailed D's attorneys to notify them that the wire transfer could not be completed with the account information provided. On December 26, 2020, D died, and D's attorneys subsequently contacted the buyer's attorneys to notify them of D's death. D's attorneys instructed the buyer's attorneys to wire the money from the sale proceeds to their attorney trust account, which the buyer's attorneys did. Upon receiving the sale proceeds, D's attorneys held the money in the account until they spoke with W, the attorney for the fiduciaries of D's estate. D's attorneys then released the sale proceeds to W to hold in escrow until the Probate Court could determine ownership of the funds. D's attorneys and the buyer's attorneys filed separate motions to dismiss the plaintiff's complaint, arguing that the trial court lacked personal jurisdiction over them as nonresidents of Connecticut because the plaintiff failed to prove that the requirements of § 52-59b (a) were satisfied as to any of the defendants. To support her claim that the defendants were subject to personal jurisdiction in Connecticut, the plaintiff pointed to evidence including, inter alia, a portion of the website for D's attorneys that was titled "Attention: out of state sellers," B's deposition testimony that B Co. had clients from "all over the place," and language from the website for the buyer's attorneys indicating that they provided legal services in the Northeast. After an evidentiary hearing, the trial court granted the defendants' motions to dismiss, concluding that it did not have personal jurisdiction over the defendants pursuant to § 52-59b (a) and that the defendants had insufficient minimum contacts with Connecticut to satisfy constitutional due process requirements. *Held*:

1. The trial court properly determined that D's attorneys were not subject to personal jurisdiction pursuant to § 52-59b (a):

a. The plaintiff failed to meet her burden of establishing that D's attorneys transacted any business in Connecticut within the meaning of § 52-59b (a) (1): D's attorneys derived only minimal income from Connecticut residents, did not solicit business in Connecticut, and did not promote themselves as a national firm, and, with respect to the sale of the Vermont property, D's attorneys performed all legal services exclusively in Vermont and did not meet with D or the plaintiff in Connecticut; moreover, D's attorneys were retained to represent D in the sale of real property located in the state of Vermont and, although both D and the plaintiff were Connecticut residents at all relevant times and D's attorneys conversed with D several times while he was in Connecticut, those facts were insufficient to establish that D's attorneys transacted business in the state without additional evidence that D's attorneys had projected themselves into Connecticut in such a manner that they purposefully

availed themselves of the benefits and protections of its laws; furthermore, contrary to the plaintiff's claim, the transfer by D's attorneys of the sale proceeds to and their communication with W and W's firm, Connecticut residents, were insufficient to satisfy the requirements of § 52-59b (a) (1), as the plaintiff failed to provide any evidence that D's attorneys affirmatively and purposefully contacted W or W's firm or that a contract existed between D's attorneys and W or W's firm.

b. The plaintiff could not prevail on her claim that the trial court had personal jurisdiction over D's attorneys pursuant to § 52-59b (a) (2); the plaintiff failed to meet her burden of establishing that D's attorneys committed a tort in Connecticut, given that B clearly denied in his affidavit that he committed any tortious acts in Connecticut, the plaintiff failed to refute those claims, and the plaintiff failed to present evidence demonstrating that the act of wiring the money from the sale proceeds involved false representations made by D's attorneys regarding anyone or anything related to the subject real estate transaction or, specifically, regarding the plaintiff and/or her alleged property or assets.

c. The plaintiff could not prevail on her claim that the trial court had personal jurisdiction over D's attorneys pursuant to § 52-59b (a) (3): although the plaintiff argued that D's attorneys regularly solicited business in Connecticut by virtue of their website and pointed to B's deposition testimony that B Co. had clients from "all over the place," that evidence, at best, merely established that D's attorneys had previously had clients who were not Vermont residents and that they had information available for potential out-of-state sellers on their website, but the evidence was too attenuated to establish that D's attorneys had either done any business in the state of Connecticut or had specifically solicited business in the state; moreover, there was no evidence that D's attorneys received any revenue from Connecticut other than minimal income received from D in connection with the sale of the Vermont property, and the plaintiff failed to present any facts to support her claim that D's attorneys received substantial revenue from Connecticut; furthermore, although the evidence cited by the plaintiff may support a claim that D's attorneys derived some revenue from interstate commerce, the plaintiff did not provide specific evidence demonstrating the number of interstate clients or amount of interstate revenue derived by D's attorneys but, rather, provided vague evidence that was insufficient to support a conclusion that the amount of revenue D's attorneys received from interstate commerce was substantial.

2. The plaintiff could not prevail on her claim that the buyer's attorneys were subject to personal jurisdiction pursuant to § 52-59b (a) (3):

a. Even assuming, arguendo, that the buyer's attorneys committed tortious acts outside of Connecticut causing injury to the plaintiff within the state, the plaintiff provided insufficient evidence that the jurisdictional requirements in § 52-59b (a) (3) (A) were satisfied: the plaintiff's claim that the buyer's attorneys regularly solicited business in Connecticut

through their website was unavailing, as the language highlighted by the plaintiff was taken out of context and given that, read in its entirety, the website stated that the buyer's attorneys provided services "in this beautiful part of the Northeast," it appeared that the website advertised the legal work that S Co. did in Vermont specifically, rather than advertising to the Northeast as a whole, and it was not apparent from that portion of the website that the buyer's attorneys regularly conducted or solicited business in Connecticut; moreover, although the website noted that S was admitted to practice in Connecticut, the information provided was a resume only, intended to provide potential clients with further information about S, rather than a solicitation of Connecticut clients; furthermore, there was insufficient evidence that the buyer's attorneys derived substantial revenue from the state as, even assuming, arguendo, that S were still involved in the referenced District Court case, that did not support the assertion that the buyer's attorneys derived substantial revenue from Connecticut, and, on the contrary, S's affidavit supported her assertion that she had derived minimal, if any, revenue from the state since she retired from practicing law in Connecticut, and it was unlikely that, even if S were still involved in the District Court case, that the proceeds from that case alone would have demonstrated that the buyer's attorneys could fairly have been expected to be haled into court in Connecticut for an entirely unrelated case.

b. The plaintiff provided insufficient evidence from which to conclude that the buyer's attorneys derived substantial revenue from interstate or international commerce that would subject them to personal jurisdiction pursuant to § 52-59b (a) (3) (B): although the testimonials on the website for the buyer's attorneys may have supported a claim that the buyer's attorneys derived revenue from interstate commerce, the plaintiff failed to provide sufficient evidence about these transactions from which the court could determine whether the buyer's attorneys derived substantial revenue from interstate commerce and, rather, the plaintiff merely showed that the website contained testimonials from clients from states other than Vermont without further information about what percentage of the buyer's attorneys' revenues those non-Vermont clients made up, the amount of revenue derived from those clients, or any other relevant facts and, therefore, the plaintiff provided insufficient evidence to conclude that, even if the buyer's attorneys did derive some revenue from interstate commerce, that revenue was substantial enough to satisfy the requirements of § 52-59b (a) (3) (B).

3. Because the plaintiff failed to meet her burden in establishing that the trial court could exercise personal jurisdiction over the defendants pursuant to § 52-59b (a), this court was not required to decide whether the defendants had sufficient minimum contacts with Connecticut to meet the constitutional requirements of due process.

Argued January 11—officially released April 16, 2024

*Procedural History*

Action to recover damages for, inter alia, negligence, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Wilson, J.*, granted the motions to dismiss filed by the named defendant et al. and rendered judgment thereon, from which the plaintiff filed separate appeals to this court. *Affirmed.*

*Michael S. Taylor*, with whom were *Brendon P. Levesque*, and, on the brief, *Steven Berglass* and *Rosie Miller*, for the appellant (plaintiff).

*Colleen Vellturo*, with whom, on the brief, was *Stephen P. Brown*, for the appellees (named defendant et al.).

*Walter J. Klimczak III*, for the appellees (defendant Marylou Scofield et al.).

*Opinion*

WESTBROOK, J. The plaintiff, Justine Lyons, appeals from the judgment of the trial court dismissing the underlying action against the defendants Birmingham Law Office, LLC, and Attorney Matthew Birmingham (Birmingham defendants); and Marylou Scofield, PC, and Attorney Marylou Scofield (Scofield defendants),[1] for lack of personal jurisdiction. The plaintiff claims that the court improperly concluded that (1) personal jurisdiction over the defendants was not conferred under our state's long arm statute, General Statutes § 52-59b, and (2) exercising jurisdiction over the defendants would violate the due process requirements of

---

[1] The plaintiff additionally named as defendants The Law Offices of David L. Weiss and Attorney David L. Weiss (Weiss defendants). The Weiss defendants, however, are not participating in this appeal. Accordingly, all references to the defendants in this opinion are only to the Birmingham defendants and the Scofield defendants, collectively.

the United States constitution because they have insufficient "minimum contacts" with the state.[2] We disagree and, accordingly, affirm the judgment of the trial court.

We consider the following facts as alleged in the complaint and those facts contained in the affidavits and exhibits submitted in support of the defendants' motions to dismiss and the plaintiff's opposition thereto. The plaintiff was the longtime girlfriend of Alfred Ducharme (decedent) and lived with him for years prior to his death in December, 2020. Both the plaintiff and the decedent were Connecticut residents at all relevant times. The decedent owned property at 137 Flatow Road in Ludlow, Vermont (Vermont property), in which the plaintiff had no ownership interest. In 2020, the Birmingham defendants represented the decedent in the sale of the Vermont property to a buyer from Massachusetts represented by the Scofield defendants. The plaintiff was not a party to this real estate transaction.

Birmingham Law Office, LLC, is located and conducts business in the state of Vermont. Attorney Birmingham is the sole member of this firm. He practices law exclusively in Vermont. He is not admitted to the Connecticut bar. Throughout his representation of the decedent in the sale of the Vermont property, Attorney Birmingham communicated with the decedent at various times while the decedent was in Connecticut.[3]

---

[2] The plaintiff additionally claimed that there was personal jurisdiction over the defendants pursuant to General Statutes § 33-929 (f), the state's long arm statute pertaining to foreign corporations. It is well settled, however, that our "general long arm jurisdiction provision, § 52-59b, rather than our corporation specific long arm provision, § 33-929, applies to foreign [limited liability companies]." *Matthews* v. *SBA, Inc.*, 149 Conn. App. 513, 546, 89 A.3d 938, cert. denied, 312 Conn. 917, 94 A.3d 642 (2014). The plaintiff's counsel conceded at oral argument before this court that § 33-929 (f) is inapplicable to the defendants.

[3] The exact nature and extent of these communications are not clearly alleged. It appears, however, that the Birmingham defendants and the decedent communicated several times via telephone and email in connection with the sale of the Vermont property while the decedent was in Connecticut.

Marylou Scofield, PC, is located and conducts business in the state of Vermont. Although Attorney Scofield previously practiced law in Connecticut, she moved her law practice to Vermont in 2013 and retired from the practice of law in Connecticut in 2019. Marylou Scofield, PC, has represented clients from across the Northeast, as evidenced by the testimonials on its website from out of state clients. None of the testimonials, however, is from a Connecticut resident. Attorney Scofield was additionally listed as the lead counsel for a party to a federal action in the United States District Court for the District of Connecticut[4] as late as 2019, but the party that she represented was no longer actively involved in the action at that time.[5]

A real estate closing occurred on December 23, 2020, and the Vermont property was sold. At the time of closing, the decedent instructed the Birmingham defendants to have the Scofield defendants wire the sale proceeds to the plaintiff's bank account.[6] The Birmingham defendants forwarded the provided bank account information to the Scofield defendants. On December 24, 2020, the Scofield defendants attempted to wire the money to the account but could not do so because the provided account information was incorrect. The Scofield defendants subsequently emailed the Birmingham defendants to notify them that the wire transfer could not be completed with the account information provided.

The complaint does not allege that Attorney Birmingham ever traveled to Connecticut to meet with the decedent.

[4] See *Wachovia Mortgage*, *FSB* v. *Toczek*, Docket No. 3:18-CV-1965 (VLB), 2019 WL 6837788 (D. Conn. December 16, 2019).

[5] Attorney Scofield represented Wachovia Mortgage, FSB, in the District Court action. On June 10, 2013, the Superior Court entered an order granting the motion of Wachovia Mortgage, FSB, to substitute Wells Fargo Bank, N.A., as the plaintiff.

[6] The bank account provided was held with a Florida bank, not a Connecticut bank.

On December 26, 2020, the decedent died. The Birmingham defendants contacted the Scofield defendants to notify them of the decedent's death. The Birmingham defendants instructed the Scofield defendants to instead wire the money from the sale proceeds to their IOLTA account,[7] which the Scofield defendants subsequently did. Upon receiving the sale proceeds, the Birmingham defendants held the money in their IOLTA account until they spoke with the defendant Attorney David L. Weiss of the defendant The Law Offices of David L. Weiss (Weiss defendants), the attorney for the fiduciaries of the decedent's estate. The Birmingham defendants subsequently released the sale proceeds to Attorney Weiss to hold in escrow until the Probate Court could determine ownership of the funds.[8]

The plaintiff commenced the present action by way of a three count complaint against the defendants on June 7, 2021. The complaint alleged negligence and violations of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., arising from the sale of the Vermont property.

The Birmingham defendants filed a motion to dismiss for lack of personal jurisdiction on August 3, 2021. They argued that the court "lacks personal jurisdiction over the [Birmingham] defendants as nonresidents of the state of Connecticut. More particularly, the requirements of the long arm statute . . . § 52-59b . . . have not been met because Attorney Birmingham practices exclusively in the state of Vermont and has not performed legal services in relation to any property or

---

[7] "IOLTA stands for interest on lawyers' trust accounts." (Internal quotation marks omitted.) *Office of Chief Disciplinary Counsel* v. *Miller*, 335 Conn. 474, 476 n.1, 239 A.3d 288 (2020).

[8] Attorney Birmingham, in an affidavit, averred that he "sent the sale proceeds to [Attorney Weiss] based on his agreement to hold the funds in escrow until the probate court determined who was entitled to receive the funds."

asset in this state. . . . The only connection with this matter is his former representation of a seller of real property located in Vermont. Moreover, personal jurisdiction would violate constitutional due process because there are insufficient 'minimum contacts' with this state, which is required under due process. He has no offices or employees in Connecticut and does not own, possess or use real property in this state. It is not foreseeable that Attorney Birmingham would be haled into court in the state of Connecticut, and, as such, personal jurisdiction would offend traditional notions of fair play and substantial justice."

The Scofield defendants also filed a motion to dismiss for lack of personal jurisdiction on August 4, 2021. The Scofield defendants argued that, "in this matter, the state of Connecticut does not have jurisdiction over the [Scofield] defendants because they did not transact any business within . . . the state of Connecticut, nor do the [Scofield] defendants meet the minimum contacts requirements . . . ."

The plaintiff filed objections to both motions to dismiss, to which the Birmingham defendants and the Scofield defendants each filed a reply. In her objections to the defendants' motions to dismiss, the plaintiff argued that "the requirements of Connecticut's long arm statute . . . are satisfied and due process is not violated by [the] court's exercise of personal jurisdiction over the defendants." Specifically, she argued that "[t]he Birmingham defendants engaged in Connecticut communications and transactions, including legal representation of a Connecticut resident as well as negotiation and agreement with a Connecticut attorney, thus transferring substantial monies to that Connecticut attorney. Attorney Birmingham is currently admitted in the Connecticut Superior Court, and the Birmingham defendants' Internet website solicits and advertises for out-of-state interstate clients. The instant action involves

Connecticut conduct and improper actions of the Birmingham defendants.''

As to the Scofield defendants, the plaintiff argued that "[Attorney] Scofield currently maintains admission in the United States District Court for the District of Connecticut . . . the Scofield defendants solicit and advertise for Connecticut and interstate clients to provide services in the Northeast . . . [are] registered in Connecticut, and [have] over twenty years of experience serving clients in New York, Connecticut and Vermont. The instant action involves Connecticut residents and improper actions of the Scofield defendants.''

The court thereafter directed the parties to review our Supreme Court's decision in *North Sails Group, LLC* v. *Boards & More GmbH*, 340 Conn. 266, 264 A.3d 1 (2021), and to submit supplemental briefing on the case's relevance to the issue of personal jurisdiction raised by the defendants' motions to dismiss. The parties complied with the order and submitted supplemental briefs. The court additionally ordered a *Standard Tallow* evidentiary hearing,[9] which occurred remotely on February 1, 2022.

Following the *Standard Tallow* evidentiary hearing, the trial court issued its memorandum of decision granting the defendants' motions to dismiss. In its memorandum of decision, the court concluded that it did not have personal jurisdiction over the defendants pursuant to § 52-59b (a) and that the defendants had insufficient minimum contacts with Connecticut to meet constitutional due process requirements.

Specifically, the court concluded that it did not have personal jurisdiction over the Birmingham defendants

---

[9] In *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 459 A.2d 503 (1983), our Supreme Court concluded that, "[w]hen issues of fact are necessary to the determination of a court's jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." Id., 56.

pursuant to § 52-59b (a) (1), (2) or (3). Turning first to § 52-59b (a) (1),[10] the court stated that the plaintiff failed to meet her burden of showing that the Birmingham defendants transacted any business in Connecticut. The court explained that the "evidence shows that the decedent contacted [the Birmingham defendants] seeking representation, thereby initiating contact with the Birmingham defendants. It is not readily apparent, on the basis of the evidence submitted, that the Birmingham defendants' subsequent communications with the decedent regarding the Vermont real estate transaction, while he was in Connecticut, shows that they were actively participating in business transactions within Connecticut, nor do they demonstrate that the Birmingham defendants were purposefully availing themselves of the benefits and protections of Connecticut laws. . . . [T]he subject property was located in Vermont, the real estate transaction was completed in Vermont, and . . . neither [Attorney Birmingham] nor anyone acting on behalf of the Birmingham Law Office, LLC, performed legal services in Connecticut. . . . Considering these factors, neither the communications from the Birmingham defendants nor the wire transfer to the Weiss defendants amount to the transacting of business in the state. Accordingly, the plaintiff has not met her burden [of] showing that the Birmingham defendants transacted business in Connecticut, and the court does not have personal jurisdiction over the [Birmingham] defendants pursuant to § 52-59b (a) (1)." (Citation omitted.)

The court also concluded that it did not have personal jurisdiction over the Birmingham defendants pursuant

---

[10] General Statutes § 52-59b (a) (1) provides in relevant part: "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association, or over the executor or administrator of such nonresident individual, foreign partnership or foreign voluntary association, who in person or through an agent . . . [t]ransacts any business within the state . . . ."

to § 52-59b (a) (2)[11] because the plaintiff failed to meet her burden of showing that the Birmingham defendants committed a tort within the state. According to the court, "[t]he act of wiring the money from the sale proceeds is not, in and of itself, a fraudulent misrepresentation. The plaintiff has failed to present evidence demonstrating that this wire transfer involved false representations made by the Birmingham defendants regarding anyone or anything related to the subject real estate transaction or, specifically, regarding the plaintiff and/or her alleged property or assets."

Additionally, the court concluded that it did not have personal jurisdiction over the Birmingham defendants pursuant to § 52-59b (a) (3)[12] because the plaintiff failed to meet her burden of showing that the Birmingham defendants derived substantial revenue from Connecticut or interstate commerce. The court reasoned that, even "[a]ssuming, arguendo, that the Birmingham defendants did commit a tort outside of Connecticut

[11] General Statutes § 52-59b (a) (2) provides in relevant part: "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association, or over the executor or administrator of such nonresident individual, foreign partnership or foreign voluntary association, who in person or through an agent . . . commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act . . . ."

[12] General Statutes § 52-59b (a) (3) provides in relevant part: "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association, or over the executor or administrator of such nonresident individual, foreign partnership or foreign voluntary association, who in person or through an agent . . . commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . ."

that caused injury to a person within Connecticut . . . the plaintiff has failed to show that the defendants meet the additional requirements of either § 52-59b (a) (3) (A) or (B)." (Citation omitted.) The court noted: "In the present case, the plaintiff has not provided any evidence demonstrating that the Birmingham defendants have derived substantial revenue from Connecticut or interstate commerce, outside of the fact that, at minimum, they received revenue from their representation of the decedent in the subject real estate transaction." The court therefore concluded that "the Birmingham defendants do not now, and did not at the time of the alleged tort, regularly conduct or solicit business or derive substantial revenue from Connecticut, nor did they derive revenue from interstate commerce so as to be subjected to Connecticut jurisdiction under § 52-59b (a) (3)."

The court also determined that the Birmingham defendants had insufficient minimum contacts with the state to meet constitutional due process requirements. "Because the Birmingham defendants did not transact business in Connecticut, did not commit a tort in the state of Connecticut, do not regularly conduct or solicit business from Connecticut, and do not derive substantial revenue from Connecticut or from interstate or international commerce with a commercial impact in Connecticut, the Birmingham defendants could not have reasonably anticipated being haled into court here. Accordingly, it would not be reasonable under the facts of this case for the court to confer personal jurisdiction over the Birmingham defendants. . . . [F]or the foregoing reasons, the plaintiff has failed to meet her burden of demonstrating that the court has personal jurisdiction over the Birmingham defendants." (Citation omitted.)

As to the Scofield defendants, the court concluded that it did not have personal jurisdiction over them

pursuant to § 52-59b (a) (3) and that they had insufficient minimum contacts with Connecticut to meet constitutional due process requirements. The court reasoned that, even "[a]ssuming, arguendo, that the Scofield defendants committed a tort, the plaintiff has failed to demonstrate that the [Scofield] defendants meet the additional requirements of either § 52-59b (a) (3) (A) or (B). As to subparagraph (A), the plaintiff argues, by way of printouts from the Scofield defendants' public website and a [District Court] opinion that lists Attorney Scofield as lead attorney, that the Scofield defendants regularly conduct business in Connecticut and solicit and advertise for interstate clients throughout the Northeast, including in the state of Connecticut. . . . [T]he website printouts seem to support the conclusion that the website is a recitation of Attorney Scofield's resume and for information purposes only. . . . The printouts do not demonstrate, or even suggest, that the Scofield defendants regularly conduct business outside of Vermont. Rather, they appear to confirm that the Scofield defendants provide services solely within Vermont." (Citations omitted; footnote omitted; internal quotation marks omitted.)

According to the court, although Attorney Scofield previously represented clients and practiced law in Connecticut, her affidavit states that "she has not practiced law in Connecticut since 2013 and officially retired from practicing law in the state of Connecticut in early 2019. . . . The plaintiff has not provided any evidence to counter Attorney Scofield's affidavit regarding these attestations." (Citation omitted.) The court further explained that, "[a]s to subparagraph (B), even if the Scofield defendants were aware of the plaintiff's involvement in the transaction . . . they had no reason to expect that redirecting the money from the sale proceeds to the Birmingham defendants, rather than the plaintiff, would result in consequences in Connecticut.

None of the evidence produced by the plaintiff suggests that the Scofield defendants were aware that the plaintiff resided or was located in Connecticut. . . . Moreover . . . the plaintiff has not provided any evidence to demonstrate that the Scofield defendants have derived substantial revenue from services rendered in Connecticut." The court accordingly concluded that the plaintiff had failed to demonstrate that the court had personal jurisdiction over the Scofield defendants under § 52-59b (a) (3).

The court also found that the Scofield defendants had insufficient minimum contacts with the state to meet constitutional due process requirements. The court concluded that "the Scofield defendants had no contact with Connecticut related to or arising out of the real estate transaction in Vermont in which they represented a Massachusetts buyer, and there is no evidence that the Scofield defendants derived any revenue from Connecticut with respect to any alleged interstate commerce activities in connection with the subject real estate transaction. . . . The Vermont real estate transaction between the decedent and the Scofield defendants' client is the extent of the interaction among the parties upon which the plaintiff relies for the establishment of personal jurisdiction in Connecticut. . . . Rather, the evidence demonstrates that all acts, transactions, and occurrences regarding the real estate transaction occurred within the state of Vermont and without knowledge, on the part of the Scofield defendants, that they would have consequences in the state of Connecticut. . . . The evidence further demonstrates that the Scofield defendants have not actively practiced law in Connecticut since early 2019 and that a majority, if not all, of their business is done within Vermont. . . . The plaintiff has not provided evidence to counter these assertions or to show that the Scofield

defendants derive substantial revenue from services rendered in Connecticut, as is her burden.

"Because the Scofield defendants did not transact business in Connecticut, did not derive substantial revenue from Connecticut or from interstate commerce with a commercial impact in Connecticut, and could not have reasonably expected their alleged tortious conduct to have consequences within Connecticut, the Scofield defendants could not have reasonably anticipated being haled into court here. Accordingly, under the facts of the present case, it would not be reasonable for the court to confer jurisdiction over the Scofield defendants." (Citations omitted.)

In sum, the court concluded that the plaintiff had failed to meet her burden of showing that (1) the court may exercise jurisdiction over the defendants pursuant to Connecticut's long arm statute and (2) the defendants had the requisite minimum contacts to satisfy constitutional due process requirements. The court accordingly granted the defendants' motions to dismiss. This consolidated appeal followed. Additional facts will be set forth as necessary.

As a preliminary matter, we set forth our standard of review and other relevant legal principles. "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . Because a jurisdictional challenge presents a question of law, our review is plenary. . . . When, as in the present case, the defendant challenging the court's personal jurisdiction is a foreign corporation or a nonresident individual, it is the plaintiff's burden to prove the court's jurisdiction. . . . In deciding a jurisdictional question raised by a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the

pleader. . . . In most instances, the motion must be decided on the complaint alone. However, when the complaint is supplemented by undisputed facts established by affidavits submitted in support of the motion to dismiss . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. . . . If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings. . . . If, however, the defendant submits either no proof to rebut the plaintiff's jurisdictional allegations . . . or only evidence that fails to call those allegations into question . . . the plaintiff need not supply counteraffidavits or other evidence to support the complaint . . . but may rest on the jurisdictional allegations therein." (Citations omitted; internal quotation marks omitted.) *North Sails Group, LLC* v. *Boards & More GmbH*, supra, 340 Conn. 269–70.

"When a defendant challenges personal jurisdiction in a motion to dismiss, the court must undertake a two part inquiry to determine the propriety of its exercising such jurisdiction over the defendant. The trial court must first decide whether the applicable state [long arm] statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." (Internal quotation marks omitted.) Id., 273. "It is axiomatic that

courts do not engage in constitutional analysis if a non-constitutional basis upon which to resolve an issue exists. . . . Therefore, we begin by examining the [defendants'] statutory claim to determine whether we may resolve the jurisdictional issue without addressing the constitutional issue." (Citation omitted; internal quotation marks omitted.) *Cogswell* v. *American Transit Ins. Co.*, 282 Conn. 505, 516–17, 923 A.2d 638 (2007).

"[O]ur general long arm jurisdiction provision, § 52-59b, rather than our corporation specific long arm provision, [General Statutes] § 33-929, applies to foreign [limited liability companies]." *Matthews* v. *SBA, Inc.*, 149 Conn. App. 513, 546, 89 A.3d 938, cert. denied, 312 Conn. 917, 94 A.3d 642 (2014). "Section 52-59b grants jurisdiction to the Superior Court over nonresident individuals." *Doyle Group* v. *Alaskans for Cuddy*, 146 Conn. App. 341, 347, 77 A.3d 880 (2013).

I

We begin our analysis by examining the plaintiff's claim that the court erred in concluding that § 52-59b (a) (1), (2) and/or (3) did not provide a statutory basis for personal jurisdiction over the Birmingham defendants. We disagree with the plaintiff and conclude that the trial court properly determined that the Birmingham defendants were not subject to personal jurisdiction pursuant to § 52-59b (a) (1), (2) or (3).

A

We first turn to § 52-59b (a) (1). The crux of the plaintiff's claim regarding this provision is that the Birmingham defendants' representation of and communication with the decedent, a Connecticut resident, along with the transfer of money to the Weiss defendants, also Connecticut residents, satisfy the requirements of

§ 52-59b (a) (1).[13] For the reasons that follow, we conclude that they do not.

"Our Supreme Court has explained that § 52-59b (a) (1) authorizes jurisdiction over nonresidents who transact any business within the state provided that the cause of action arises out of such transaction. . . . [A]lthough the term [t]ransacts any business is not defined by statute, [the Supreme Court has] construed the term to embrace a single purposeful business transaction. . . .

"[A] nonresident individual who has not entered this state physically nevertheless may be subject to jurisdiction in this state under § 52-59b (a) (1) if that individual has invoked the benefits and protection of Connecticut's laws by virtue of his or her purposeful Connecticut related activity . . . ." (Citations omitted; internal quotation marks omitted.) Id., 347–48. "In determining whether [the defendants'] contacts constitute the transaction of business within the state, we do not apply a rigid formula but balance considerations of public policy, common sense, and the chronology and geography of the relevant factors." *Gaudio* v. *Gaudio*, 23 Conn. App. 287, 298, 580 A.2d 1212, cert. denied, 217 Conn. 803, 584 A.2d 471 (1990). "There must be some definitive act taken by the defendant that evinces a purposeful availment of the privileges of conducting the subject activity within the forum state and that, subsequently, invokes the benefits and protections of its laws." *Walshon* v. *Ballon Stoll Bader & Nadler, P.C.*, 121 Conn. App. 366, 372, 996 A.2d 1195 (2010).

---

[13] The plaintiff also argued before the trial court "that because the Birmingham defendants maintain pro hac vice admission in Connecticut, they should have reasonably expected to be haled into court in this state." The plaintiff's counsel conceded at oral argument before this court that the Birmingham defendants' pro hac vice admission in an unrelated matter was irrelevant to the determination of personal jurisdiction in this case.

In the present case, the Birmingham defendants derived only minimal income from Connecticut residents, did not solicit business in Connecticut, and did not promote themselves as a national firm. With respect to the sale of the Vermont property, the Birmingham defendants performed all legal services exclusively in Vermont and did not meet with the decedent or the plaintiff in Connecticut. Moreover, the decedent retained the Birmingham defendants to represent him in the sale of real property located in the state of *Vermont.* Although it is true that both the decedent and the plaintiff were Connecticut residents at all relevant times and that the Birmingham defendants conversed with the decedent several times while he was in Connecticut, we agree with the trial court that those facts alone are insufficient to warrant a determination that the legal services rendered by the Birmingham defendants constituted the transacting of business in Connecticut within the meaning of § 52-59b (1) (a).

This case is analogous to *Rosenblit* v. *Danaher*, 206 Conn. 125, 537 A.2d 145 (1988), in which our Supreme Court concluded that the trial court could not exercise personal jurisdiction over the defendant pursuant to § 52-59b (a) (1) when "two Connecticut residents, [the plaintiffs], went to Massachusetts and there, with . . . a Massachusetts resident, hired an attorney, who resided and practiced law in Massachusetts, to bring an action that arose out of a series of contacts by the plaintiffs with Massachusetts residents in the main." Id., 140. The court also noted that "the proposed action concerned not only events that had occurred in large measure in Massachusetts and arose out of the plaintiffs' efforts to rehabilitate real property situated in Massachusetts, but also involved a number of potential witnesses from Massachusetts." Id. The court found that, although the Massachusetts lawyer attended a meeting in Connecticut and communicated with the

plaintiffs in connection with his representation of them; see id., 135–36; the plaintiffs had not met their burden in establishing that the defendant had transacted any business in the state. See id., 141–42; see also *Ryan* v. *Cerullo*, 282 Conn. 109, 119–23, 918 A.2d 867 (2007) (holding that court could not exercise personal jurisdiction over defendant New York accountant pursuant to § 52-59b (a) (1) when defendant performed accounting services for plaintiff Connecticut resident exclusively in New York, met with plaintiff exclusively in New York, and corresponded exclusively with New York tax officials).

In this case, the Birmingham defendants performed legal services for the decedent entirely in Vermont, never met with the plaintiff or the decedent in Connecticut, and have not otherwise engaged in any other relevant contact with Connecticut.[14] As such, the facts that the plaintiff alleges in support of the "transacts any business" requirement of § 52-59b (a) (1) amount to far less than those found insufficient to establish personal jurisdiction in *Rosenblit* v. *Danaher*, supra, 206 Conn. 125, and *Ryan* v. *Cerullo*, supra, 282 Conn. 119–23.

[14] Although the plaintiff argues that the Birmingham defendants solicited individuals in Connecticut and other states on their website, pointing to a portion of the website that says "Attention: out of state sellers," we are not persuaded. The United States District Court for the District of Connecticut has held that websites deemed "passive" cannot support personal jurisdiction. "Active websites are those where individuals can directly interact with a company over their Internet site, download, transmit or exchange information, and enter into contracts with the company via computer. . . . Active websites may support an exercise of personal jurisdiction. . . . [P]assive websites that require a potential customer to initiate contact with the foreign corporation by telephone, mail, or email, rather than allowing them to order directly over the Internet, cannot support personal jurisdiction." (Citation omitted; internal quotation marks omitted.) *Cousteau Society, Inc.* v. *Cousteau*, 498 F. Supp. 3d 287, 303 (D. Conn. 2020). We agree with the District Court's reasoning.

There is insufficient evidence that the Birmingham defendants' website is active. We accordingly conclude that the website is an insufficient basis on which to find that the Birmingham defendants solicited out of state clients.

Additionally, the Birmingham defendants' communications with the decedent while he was in Connecticut are insufficient to establish that the Birmingham defendants transacted business in the state, as "[t]elephone calls and written communications . . . generally are held not to provide a sufficient basis for personal jurisdiction under the long-arm statute . . . . [T]elephone and mail contacts are jurisdictionally insufficient unless the defendant projected himself by those means into [the forum state] in such a manner that he purposefully availed himself . . . of the benefits and protections of its laws." (Citation omitted; internal quotation marks omitted.) *Green* v. *Simmons*, 100 Conn. App. 600, 605, 919 A.2d 482 (2007).

We additionally conclude that the Birmingham defendants' transfer of sale proceeds to and communication with the Weiss defendants are insufficient to satisfy the requirements of § 52-59b (a) (1). The plaintiff claims that the Birmingham defendants entered into an oral agreement with the Weiss defendants to transfer the sale proceeds and that, because of this alleged contract, the Birmingham defendants therefore transacted business in the state of Connecticut. Through his affidavit, however, Attorney Birmingham established that neither he, nor anyone acting on behalf of Birmingham Law Offices, LLC, had entered into any contracts in the state of Connecticut. Although the evidence does show that the Birmingham defendants spoke with Attorney Weiss and subsequently transferred the sale proceeds to the Weiss defendants, the plaintiff has failed to provide sufficient evidence to establish that a contract existed between the Birmingham defendants and the Weiss defendants. In support of her claim, she points only to a portion of Attorney Birmingham's affidavit that reads: "After speaking with Attorney Weiss, [Attorney Birmingham] sent the sale proceeds to [Attorney Weiss] based on his agreement to hold the funds in escrow

until the probate court determined who was entitled to receive the funds." She additionally has failed to provide any evidence that the Birmingham defendants affirmatively and purposefully contacted the Weiss defendants. We conclude that the evidence presented is insufficient to establish that the Birmingham defendants contracted with the Weiss defendants. The plaintiff's claim, therefore, is premised exclusively on the Birmingham defendants' communication with Connecticut residents, which is insufficient to establish that the "transacts any business" requirement of § 52-59b (a) (1) has been met. See *Green* v. *Simmons*, supra, 100 Conn. App. 605.

In short, the plaintiff has failed to meet her burden of establishing that the Birmingham defendants transacted any business within the state. Accordingly, we conclude that the trial court may not exercise personal jurisdiction over the Birmingham defendants pursuant to § 52-59b (a) (1).

B

We next turn to § 52-59b (a) (2). The plaintiff claims that the Birmingham defendants committed a tort in the state by failing to deliver the sale proceeds to the plaintiff and, instead, transferring the money to the Weiss defendants to hold for the decedent's estate. The plaintiff, however, does not clearly allege what tort was committed. Rather, she vaguely argues that the Birmingham defendants' "communications involved misrepresentations and omissions" and that, in failing to deliver the sale proceeds as instructed by the decedent, the Birmingham defendants committed a tort that caused harm in Connecticut. For the following reasons, we disagree.

Section 52-59b (a) (2) provides in relevant part that "a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign

voluntary association, or over the executor or administrator of such nonresident individual, foreign partnership or foreign voluntary association, who in person or through an agent . . . commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act . . . ."

The plaintiff has failed to meet her burden of establishing that the Birmingham defendants committed a tort in Connecticut. "When, as in the present case, the defendant challenging the court's personal jurisdiction is a foreign corporation or a nonresident individual, it is the plaintiff's burden to prove the court's jurisdiction." (Internal quotation marks omitted.) *North Sails Group, LLC* v. *Boards & More GmbH*, supra, 340 Conn. 269. Attorney Birmingham, in his affidavit, clearly denied committing any tortious acts in Connecticut.[15] The plaintiff has failed to refute those claims. Rather, she relies solely on conclusory allegations in her complaint that the Birmingham defendants committed a false misrepresentation communicated into Connecticut, that they improperly transferred the sale proceeds to the Weiss defendants within the state, and that they therefore had committed a tort in the state. "If affidavits and/ or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action . . . ." (Emphasis omitted; internal quotation marks omitted.) *Matthews* v. *SBA, Inc.*, supra, 149 Conn. App. 552.

We conclude that Attorney Birmingham's affidavit supports his assertion that jurisdiction pursuant to § 52-59b (a) (2) is lacking and that the plaintiff has failed

---

[15] Specifically, Attorney Birmingham's affidavit states: "I have not committed a tortious act in the state of Connecticut, nor committed a tortious act outside the state causing injury to a person or property in the state of Connecticut."

to undermine this conclusion. "A plaintiff, in presenting facts sufficient to establish the court's jurisdiction, must present specific, and not simply conclusory, allegations." Id. We agree with the trial court that "[t]he act of wiring the money from the sale proceeds is not, in and of itself, a fraudulent misrepresentation. The plaintiff has failed to present evidence demonstrating that this wire transfer involved false representations made by the Birmingham defendants regarding anyone or anything related to the subject real estate transaction or, specifically, regarding the plaintiff and/or her alleged property or assets." We therefore conclude that the plaintiff has failed to meet her burden in proving the court's jurisdiction pursuant to § 52-59b (a) (2).

C

We last turn to § 52-59b (a) (3). The plaintiff contends that the trial court had personal jurisdiction over the Birmingham defendants because (1) the Birmingham defendants committed a tortious act outside of Connecticut,[16] (2) that act caused injury to the plaintiff within the state, (3) the plaintiff's cause of action arises from the Birmingham defendants' tortious act, and (4) the Birmingham defendants (a) regularly do or solicit business in the state, (b) derive substantial revenue from the state, or (c) expected or reasonably should have expected that the act would have consequences in the state and derived substantial revenue from interstate commerce. For the reasons that follow, we disagree.

---

[16] The plaintiff has not clearly stated exactly what the claimed tortious act is. The plaintiff, instead, has vaguely argued that "[t]he Birmingham defendants' communications involved misrepresentations and omissions." She argues that the Birmingham defendants' failure to wire her the sale proceeds and instead transferring the money to the Weiss defendants "violated [the decedent's] written instructions to the Birmingham defendants that the plaintiff receive the monies at the closing. The foregoing constitutes false statements, misrepresentations, omissions, and tortious conduct."

Section 52-59b (a) (3) provides in relevant part that "a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association, or over the executor or administrator of such nonresident individual, foreign partnership or foreign voluntary association, who in person or through an agent . . . commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . ."

"[T]he substantial revenue requirement is designed to narrow the long-arm reach to preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within the [s]tate but whose business operations are of a local character . . . . Put differently, substantial revenue means enough revenue to indicate a commercial impact in the forum, such that a defendant fairly could have expected to be haled into court there. . . . Because of the indefinite nature of the substantial revenue requirement, the determination of whether that jurisdictional threshold has been met in any particular case necessarily will require a careful review of the relevant facts and frequently will entail an evaluation of both the total amount of revenue involved and the percentage of annual income that that revenue represents." (Citations omitted; internal quotation marks omitted.) *Ryan* v. *Cerullo*, supra, 282 Conn. 125.

The plaintiff has failed to meet any of the statutory requirements in § 52-59b (a) (3) (A) and (B), namely,

that the Birmingham defendants either do or solicit business in the state or derived substantial revenue from Connecticut or interstate commerce.[17] In order to find that the trial court could exercise jurisdiction over the Birmingham defendants pursuant to § 52-59b (a) (3), the plaintiff must demonstrate that the additional requirements of either § 52-59b (a) (3) (A) or (B) are met. We address each in turn.

i

In order to exercise jurisdiction over the Birmingham defendants pursuant to § 52-59b (a) (3) (A), the plaintiff must establish, in addition to the tortious conduct element, that the Birmingham defendants either (1) regularly do or solicit business in Connecticut, or (2) derive substantial revenue from services rendered in the state. See General Statutes § 52-59b (a) (3) (A). We conclude that the plaintiff has provided insufficient evidence as to each and therefore conclude that the court may not exercise jurisdiction over the Birmingham defendants pursuant to § 52-59b (a) (3) (A).

Although the plaintiff claims that the Birmingham defendants regularly solicit business in Connecticut, we are not persuaded. In support of her claim, the plaintiff argues that the Birmingham defendants regularly do or solicit business by virtue of their website. Specifically, she points to a portion of the Birmingham defendants' website that is titled: "Attention: out of state sellers." She argues that this, in light of Attorney Birmingham's deposition testimony in which he stated that his firm

---

[17] Although § 52-59b (a) (3) (A) would also be satisfied if the plaintiff established that the Birmingham defendants engaged "in any other persistent course of conduct" in the state, the plaintiff did not rely on this statutory language in arguing that the statutory requirements of § 52-59b (a) (3) (A) have been met. We, accordingly, consider only whether the other statutory requirements, namely, whether the Birmingham defendants have done or solicited business in Connecticut or derived substantial revenue from services rendered in the state, have been met.

"ha[s] clients from all over the place," establishes that the Birmingham defendants regularly solicit business in the state. This evidence, however, is insufficient to establish that the Birmingham defendants regularly solicit business in *Connecticut*. At best, this evidence establishes that the Birmingham defendants have previously had clients who were not Vermont residents and that they have information available for potential out-of-state sellers on their website. It is too attenuated, however, to establish that the Birmingham defendants have either done any business in the state of Connecticut or have specifically solicited business in the state.

We additionally conclude that the plaintiff has failed to establish that the Birmingham defendants derive substantial revenue from Connecticut. The Birmingham defendants acknowledge that they received minimal income from the state, namely, the payment received from the decedent in connection with the underlying representation of the decedent in the sale of his Vermont property. There is no evidence, however, that the Birmingham defendants received any further revenue from Connecticut or interstate commerce. The plaintiff has failed to present any facts to support her assertion that the Birmingham defendants have received *any* revenue from Connecticut, excepting that from the underlying representation of the decedent, let alone facts supporting her claim that the Birmingham defendants have received *substantial* revenue from Connecticut. We therefore conclude that the plaintiff failed to establish either of the statutory requirements of § 52-59b (a) (3) (A).

ii

In order to exercise jurisdiction over the Birmingham defendants pursuant to § 52-59b (a) (3) (B), the plaintiff must establish, in addition to the tortious conduct element, that the Birmingham defendants both (1) expect

or should reasonably expect for their actions to have consequences in the state, and (2) derive substantial revenue from interstate or international commerce. See General Statutes § 52-59b (a) (3) (B). We conclude that the plaintiff has provided insufficient evidence to find that the Birmingham defendants derived substantial revenue from interstate or international commerce and therefore conclude that the court may not exercise jurisdiction over the Birmingham defendants pursuant to § 52-59b (a) (3) (B).

The crux of the plaintiff's claim regarding § 52-59b (a) (3) (B) is substantially the same as her claim under § 52-59b (a) (3) (A). She again points to the Birmingham defendants' website, arguing that "the Birmingham defendants' Internet website advertises to clientele out of state, thus establishing interstate revenue . . . ." She additionally points to Attorney Birmingham's deposition, in which he stated that the firm has "clients from all over the place." She additionally argues that the Birmingham defendants derived revenue from interstate commerce because they "entered into a contract of representation of [the decedent], a Connecticut resident . . . ." We are not persuaded.

Although the evidence cited by the plaintiff may support her claim that the Birmingham defendants have derived *some* revenue from interstate commerce, we are not persuaded that this evidence establishes that the Birmingham defendants derive *substantial* revenue from interstate commerce, as required by § 52-59b (a) (3) (B). "[S]ubstantial revenue means enough revenue to indicate a commercial impact in the forum, such that a defendant fairly could have expected to be haled into court there. . . . Because of the indefinite nature of the substantial revenue requirement, the determination of whether that jurisdictional threshold has been met in any particular case necessarily will require a careful review of the relevant facts and frequently will entail

an evaluation of both the total amount of revenue involved and the percentage of annual income that that revenue represents." (Citation omitted; internal quotation marks omitted.) *Ryan* v. *Cerullo*, supra, 282 Conn. 125. The plaintiff has not provided specific evidence demonstrating the number of interstate clients or amount of interstate revenue the Birmingham defendants derive. The evidence provided is vague and insufficient to support a conclusion that the amount of revenue the Birmingham defendants received from interstate commerce was substantial.

We therefore conclude that the plaintiff has failed to meet her burden of establishing that the trial court may exercise personal jurisdiction over the Birmingham defendants pursuant to § 52-59b (a) (3) (A) or (B). Accordingly, we need not decide whether the Birmingham defendants have sufficient minimum contacts with Connecticut to satisfy constitutional due process requirements because it is only "[i]f the statutory [long arm] requirements [are] met, [that the court then] decide[s] whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." (Internal quotation marks omitted.) *North Sails Group, LLC* v. *Boards & More GmbH*, supra, 340 Conn. 273. We therefore conclude that the trial court properly determined that it could not exercise personal jurisdiction over the Birmingham defendants pursuant to § 52-59b (a) (1), (2) or (3).

II

The plaintiff claims that the trial court had personal jurisdiction over the Scofield defendants pursuant to § 52-59b (a) (3)[18] because (1) they committed a tortious

---

[18] The plaintiff additionally argued in her principal appellate brief that the court had personal jurisdiction over the Scofield defendants pursuant to § 52-59b (a) (1), an argument not made by the plaintiff before the trial court. The plaintiff's counsel abandoned this claim during oral argument before this court.

act outside of Connecticut, (2) that act caused injury to the plaintiff within the state, (3) the plaintiff's cause of action arises from the Scofield defendants' tortious act, and (4) the Scofield defendants (a) regularly do or solicit business in the state, (b) derive substantial revenue from the state, or (c) expected or reasonably should have expected that the act would have consequences in the state and derived substantial revenue from interstate commerce. We disagree.

Even if we assume, arguendo, that the Scofield defendants committed tortious acts outside of the state, causing injury to the plaintiff within the state, the plaintiff has still failed to meet the final statutory requirement, namely, that the Scofield defendants either do or solicit business in the state or derived substantial revenue from Connecticut or interstate commerce. In order to find that the trial court could exercise jurisdiction over the Scofield defendants pursuant to § 52-59b (a) (3), the plaintiff must demonstrate that the additional requirements of either § 52-59b (a) (3) (A) or (B) are met. We address each in turn.

A

We first turn to § 52-59b (a) (3) (A). In order to exercise jurisdiction over the Scofield defendants pursuant to § 52-59b (a) (3) (A), the plaintiff must establish, in addition to the tortious conduct element, that the Scofield defendants either (1) regularly do or solicit business in Connecticut, or (2) derive substantial revenue from services rendered in the state.[19] See General Statutes § 52-59b (a) (3) (A). We conclude that the plaintiff

---

[19] As with the Birmingham defendants, the plaintiff did not argue that the Scofield defendants engaged "in any other persistent course of conduct" in the state in arguing that the statutory requirements of § 52-59b (a) (3) (A) have been met, and we, accordingly, consider only whether the other statutory requirements, namely, whether the Scofield defendants have done or solicited business in Connecticut or derived substantial revenue from services rendered in the state, have been met. See footnote 17 of this opinion.

has provided insufficient evidence as to each and therefore conclude that the court may not exercise jurisdiction over the Scofield defendants pursuant to § 52-59b (a) (3) (A).

The plaintiff claims that the Scofield defendants regularly solicit business in the state through their website. Particularly, the plaintiff argues that the website says that the Scofield defendants provide services in the "Northeast" and highlights that Attorney Scofield is licensed to practice in Connecticut. We are not persuaded.

First, the portion of the Scofield defendants' website quoted by the plaintiff is taken out of context. Read in its entirety, the website states that "[t]he Firm's goal is to offer top level real estate services as well as general legal services and estate and probate work as needed to individuals and small business entities living and operating *in this beautiful part* of the Northeast." (Emphasis added.) It appears, in context, that the website advertises the legal work the firm does in *Vermont* specifically, rather than advertising to the Northeast as a whole. It is not apparent from this portion of the website that the Scofield defendants regularly conduct or solicit business in Connecticut.

Additionally, although the website does note that Attorney Scofield is admitted to practice in Connecticut, we are not convinced that this alone demonstrates that the Scofield defendants solicited business in the state. The website states that Attorney Scofield is "[a]dmitted to practice in Vermont, Connecticut, and New York" and that she has "[o]ver 20 years of legal experience serving both public and private sector clients in New York, Connecticut and Vermont." We agree with the trial court that the provided information is a resume only, intended to provide potential clients with

further information about Attorney Scofield, rather than a solicitation of Connecticut clients.

There is also insufficient evidence that the Scofield defendants derive substantial revenue from the state. The plaintiff points to Attorney Scofield's status as "lead attorney" in a case before the United States District Court in support of her contention that the Scofield defendants regularly conduct business in and derive substantial revenue from Connecticut. The Scofield defendants provided evidence showing that Attorney Scofield is no longer actively involved in the referenced case[20] and that she has not practiced law in the state since 2019. Additionally, even assuming, arguendo, that Attorney Scofield were still involved in that District Court case, this does not support the assertion that the Scofield defendants derived *substantial* revenue from the state of Connecticut. Our Supreme Court has clearly stated that "substantial revenue means enough revenue to indicate a commercial impact in the forum, such that a defendant fairly could have expected to be haled into court there." (Internal quotation marks omitted.) *Ryan* v. *Cerullo*, supra, 282 Conn. 125. Attorney Scofield does not dispute that she previously represented clients in and practiced law in Connecticut, but her affidavit supports her assertion that she officially retired from practicing law in the state in 2019 and that she has derived minimal, if any, revenue from the state since that time. It is additionally unlikely that, even if Attorney Scofield were still involved in the referenced District Court case at the time of the sale of the Vermont property, the proceeds from that case alone would demonstrate that the Scofield defendants could fairly have been expected

---

[20] Specifically, the Scofield defendants highlighted the fact that the case was closed in 2018, and that the later motion for reconsideration was filed by the defendant against the substitute plaintiff, not the party represented by Attorney Scofield. See *Wachovia Mortgage, FSB* v. *Toczek*, Docket No. 3:18-CV-1965 (VLB), 2019 WL 6837788 (D. Conn. December 16, 2019); see also footnote 5 of this opinion.

to be haled into court in Connecticut for an entirely unrelated case.

The plaintiff has provided no other evidence that the Scofield defendants derived any, let alone substantial, revenue from Connecticut. Therefore, we conclude that the plaintiff has failed to meet her burden in establishing that the court may exercise personal jurisdiction over the Scofield defendants pursuant to § 52-59b (a) (3) (A).

B

Finally, we turn to § 52-59b (a) (3) (B). In order to exercise jurisdiction over the Scofield defendants pursuant to § 52-59b (a) (3) (B), the plaintiff must establish, in addition to the tortious conduct element, that the Scofield defendants both (1) expect or should reasonably expect for their actions to have consequences in the state, and (2) derive substantial revenue from interstate or international commerce. See General Statutes § 52-59b (a) (3) (B). We conclude that the plaintiff has provided insufficient evidence to conclude that the Scofield defendants derived substantial revenue from interstate or international commerce and, therefore, conclude that the court may not exercise jurisdiction over the Scofield defendants pursuant to § 52-59b (a) (3) (B).

In support of her argument that the Scofield defendants derive substantial revenue from interstate commerce, the plaintiff points to a portion of the Scofield defendants' website that contains testimonials from prior out-of-state clients. Although these testimonials may support a claim that the Scofield defendants derive revenue from interstate commerce, the plaintiff has failed to provide sufficient evidence about these transactions from which the court could determine whether the Scofield defendants derive *substantial* revenue from interstate commerce and accordingly establish

jurisdiction pursuant to § 52-59b (a) (3) (B). The plaintiff has simply shown that the website contains testimonials from clients from states other than Vermont without further information about what percentage of the Scofield defendants' revenues these non-Vermont clients make up, the amount of revenue derived from these clients, or any other relevant facts. Because "the determination of whether [the substantial revenue] threshold has been met in any particular case necessarily will require a careful review of the relevant facts and frequently will entail an evaluation of both the total amount of revenue involved and the percentage of annual income that that revenue represents"; *Ryan* v. *Cerullo*, supra, 282 Conn. 125; we conclude that the plaintiff has provided insufficient evidence to conclude that, even if the Scofield defendants do derive some revenue from interstate commerce, that revenue is substantial enough to satisfy the requirements of § 52-59b (a) (3) (B).

Because we conclude that the plaintiff has failed to meet her burden in establishing that the court may exercise personal jurisdiction over the Scofield defendants pursuant to the relevant long arm statute provision alleged, we need not decide whether the Scofield defendants have sufficient minimum contacts with Connecticut to meet the constitutional requirements of due process, as it is only "[i]f the statutory [long arm] requirements [are] met, [that the court then] decide[s] whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." (Internal quotation marks omitted.) *North Sails Group, LLC* v. *Boards & More GmbH*, supra, 340 Conn. 273.

To summarize, we conclude that the trial court properly determined that it could not exercise personal jurisdiction over the defendants pursuant to § 52-59b (a).

Accordingly, we affirm the judgment of the trial court granting the defendants' motions to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.